NOTICE
Decision filed 11/10/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 160006

NO. 5-16-0006

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LARRY HOPKINS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-MR-512 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| FIREFIGHTERS PENSION FUND OF THE | ) | |
| CITY OF EAST ST. LOUIS, ILLINOIS; | ) | |
| JOHNNIE ANTHONY, Board President, | ) | |
| Board of Trustees of the Firefighters Pension | ) | |
| Fund of the City of East St. Louis, Illinois; | ) | |
| and GEORGE McCLELLAN, JR., WILLIAM | ) | |
| FENNOY, MICHAEL DILL, and RAYMOND | ) | |
| MIX, Board of Trustees of the Firefighters | ) | |
| Pension Fund of the City of East St. Louis, | ) | |
| Illinois, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | Honorable |
| (The City of East St. Louis, Intervenor- | ) | Robert P. LeChien, |
| Appellant). | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Larry Hopkins, a captain with the East St. Louis Fire Department, filed

an application for a line of duty disability pension with defendant, the Board of Trustees

1

of the Firefighters Pension Fund of the City of East St. Louis (Board). Other defendants are Johnnie Anthony, Board president, and George McClellan, Jr., William Fennoy, Michael Dill, and Raymond Mix, Board members. Plaintiff claimed the cumulative effects of two injuries he suffered while on the job caused him to be disabled. The City of East St. Louis (City) intervened. Following a hearing, the Board unanimously found plaintiff failed to meet his burden that he sustained a line of duty disability. Plaintiff filed a timely action for administrative review in the circuit court of St. Clair County. The circuit court entered an order reversing the Board's decision and awarding plaintiff a line of duty pension pursuant to section 4-110 of the Illinois Pension Code (Code) (40 ILCS 5/4-110 (West 2014)). The City now appeals. The issues raised in this appeal are: (1) whether the evidence supported the Board's decision that no on-duty incidents caused or were a contributing factor to plaintiff's disability; (2) whether the circuit court erred in finding the Board's decision "clearly erroneous"; and (3) whether the circuit court erred in entering an order reversing the decision of the Board and finding plaintiff entitled to a line of duty disability. We affirm.

¶ 2                                  BACKGROUND

¶ 3     Plaintiff was hired as a firefighter by the City on February 15, 1978. On January 15, 2013, plaintiff filed an application for a line of duty disability pension based upon the cumulative effects of two separate injuries he suffered in the line of duty. The first injury occurred on July 5, 2009, while plaintiff was fighting a structural fire at a commercial business. In order to gain access to the building, the firefighters had to raise an overhead door. Plaintiff was injured when other firefighters let go of the door, causing the

2

overhead door to hit him in the head. The second injury occurred on May 23, 2011, when plaintiff was knocked unconscious after a heavy object was blown off the building that was on fire and hit him in the head. Plaintiff assumed it was "either a large brick or some type of concrete." These two injuries are also the basis for two applications for adjustment of claims plaintiff filed with the Illinois Workers' Compensation Commission. Those claims have not yet been determined.

¶ 4                                 Plaintiff's Testimony

¶ 5     Plaintiff testified he "sustained head, neck and shoulder injuries" and his knees were also affected by the overhead door injury. Plaintiff testified he went to three hospitals within the initial 23 hours after the injury, including St. Mary's Hospital in East St. Louis and Barnes-Jewish Hospital in St. Louis. Plaintiff went to rehabilitation at Rehab Excel and eventually returned to work.

¶ 6     Following the second injury, plaintiff sought treatment at, *inter alia*, Anderson Hospital and Gateway Regional Hospital. Ultimately, plaintiff underwent a cervical discectomy, fusion, and plate fixation at two levels in his neck. The surgery was performed by Dr. Yazdi in October 2011. Plaintiff went through more rehabilitation and was released by Dr. Yazdi to return to work as a firefighter effective January 5, 2012, with no restrictions. Plaintiff was discharged from formal physical therapy on January 31, 2012, to a home exercise program. Thereafter, plaintiff joined the YMCA and continued to do exercises he learned in physical therapy.

3

¶ 7    Plaintiff testified that once he started back to work, his symptoms reoccurred.  He continued to work as a fireman until November 2012, when he stopped working due to knee replacement surgery.  Plaintiff testified the head gear he is required to wear as a fireman also caused him to stop working.  Plaintiff said he did not go back to another doctor to complain about his head pain because he knew he would have to go to three doctors picked by the Board in order to get disability.

¶ 8    Plaintiff testified that while he could have included his knee problems in his application for disability, he chose instead to apply for disability based upon his head and neck injuries incurred in the work-related accidents of July 5, 2009, and May 23, 2011. Plaintiff specifically stated:

> "For me to go see three doctors about my knee would have been basically an overkill for this.  That's expensive.  My head and neck was enough of problem for me to pursue.

> So I choose to, rather than pursue all those, the knee, the head, the neck, all that, I choose to pursue what is directly related with the job that stopped me from working.  That's [why] I went that route.

> The knee is still under evaluation, I'll say.  It's not even being claimed by workmen's comp.  And rather that−it's a pick-your-battle kind of thing."

Plaintiff described his knees as a secondary issue, with his head and his neck being the primary problem.

¶ 9    Plaintiff admitted he suffered injuries and other medical conditions prior to July 5, 2009.  For example, prior to 2009, a physician told plaintiff that at some point he would

4

need a knee replacement. Plaintiff testified the doctor told him to work as long as he could stand it without the surgery. Ultimately, plaintiff quit working as a fireman after a piece of ceiling landed on a fellow firefighter and plaintiff was unable to lift it off of him. Plaintiff stopped working when he knew he was a risk to his colleagues.

¶ 10 Plaintiff admitted he received two worker's compensation settlements through his secondary employment with Granite City Steel. As of the date of the hearing, plaintiff had been employed by the steel company, now known as U.S. Steel, for 26 years. Over the course of those years, plaintiff held several positions with the steel company. The first worker's compensation settlement was due to an accident on April 30, 2001, which resulted in a settlement of 30% of the left leg. The second settlement was due to an accident in January 2003, which resulted in a settlement of 3% of the man as a whole and 10% of the left leg.

¶ 11 Plaintiff admitted he underwent three different arthroscopic knee surgeries prior to the July 5, 2009, accident. Plaintiff also underwent triple bypass surgery after a stress test in 2006 revealed heart damage. Plaintiff is being treated by Dr. Shenouda for high blood pressure and arthritis pain. These conditions also predate the 2009 accident.

¶ 12                                     Other Injuries

¶ 13 Plaintiff suffered injuries in automobile accidents predating the work-related accidents in question. For example, on February 5, 2003, plaintiff sought treatment with Dr. Shenouda, his primary care physician, for neck pain following a car accident that occurred in January 2003. Dr. Shenouda backdated an off-work slip from January 7

5

through February 5, 2003.  Plaintiff returned to Dr. Shenouda on March 6, 2006, with ongoing complaints of neck pain.  An MRI revealed a bulging disc and spinal canal stenosis at C2-4, and C5-6 for which Dr. Shenouda ordered physical therapy.  Plaintiff went to physical therapy from March 2003 until June 2003.

¶ 14   Plaintiff also sought treatment with Dr. Kini, a neurologist, after Dr. Shenouda referred him.  Plaintiff underwent one session of therapy.  A physical examination revealed mild restricted range of motion in the neck.  Dr. Kini was not certain whether plaintiff's pain was myofascial or radicular.  An EMG/NCV was recommended to the right upper limbs to check for radiculopathy.  Plaintiff returned to Dr. Kini on June 19, 2003, complaining of neck pain and headaches.  A physical examination revealed a full range of motion in the neck.  An epidural block at C4-5 was recommended and later administered.

¶ 15   Plaintiff returned to Dr. Shenouda on August 28, 2003, and to Dr. Kini on December 10, 2003, with continued complaints of neck pain.  At the December appointment with Dr. Kini, plaintiff reported his neck pain and headaches were better and he was only taking Aleve once or twice a week.  He was working a scrap burner at the steel mill, working 80 hours per week.  Dr. Kini told plaintiff to return to see him on an as-needed basis and did not recommend any prescription pain medication due to plaintiff's employment.

¶ 16                        Independent Medical Exams

¶ 17    The Board appointed three physicians to conduct independent medical exams (IMEs) and issue opinions as to whether plaintiff is entitled to a line of duty disability pension. All three doctors concluded plaintiff is totally disabled from his job as a firefighter as the result of the aforementioned on-duty injuries.

¶ 18                             *Dr. Wilkey*

¶ 19    Dr. Keith Wilkey submitted a report on October 14, 2013, after reviewing plaintiff's medical records and examining plaintiff. Dr. Wilkey noted plaintiff's current symptoms as "axial neck pain only." He noted a past medical history of "[c]oronary artery disease, hypertension, valvular disease, diabetes, osteoarthritis." Dr. Wilkey was aware of plaintiff's secondary employment at the steel company. Dr. Wilkey specifically stated:

> "It is within a reasonable degree of medical certainty that the two alleged injuries sustained by [plaintiff] were causally and directly related to his former complaints. They have been nicely treated by Dr. Yazdi with a cervical fusion. Fortunately the surgery has done its job and it has resolved the arm radiculopathy but he still has residual axial neck pain. At this point I don't think surgery would be beneficial in relieving any further of his symptoms and he is at maximum medical improvement from a surgical and nonoperative standpoint. I do believe that the restrictions of no headgear and no overhead lifting greater than 50 pounds is reasonable. I do not think that he can return to his previous occupation as a firefighter."

Dr. Wilkey prepared a supplemental report on July 28, 2014, at the Board's request, in which he drew the same conclusions. Dr. Wilkey specifically noted that plaintiff's job at the steel company was "quite dissimilar" from his job as a firefighter because of the amount of equipment, particularly headgear, necessary in fighting fires.

¶ 20 *Dr. George*

¶ 21 Dr. Phillip George submitted his report on November 6, 2013, after examining plaintiff and reviewing plaintiff's medical records. Dr. George noted the following diagnoses: ruptured cervical disc C4-5 that was work-related, probably from the second injury; post cervical fusion to C4- to C5 to C6; post triple bypass; post multiple lumbar spine fusions; and post left total knee replacement. Dr. George opined plaintiff "is not capable of returning to his duties as a firefighter." He said it would be dangerous for plaintiff to return to his duties as a firefighter and he considers plaintiff "disabled from that job."

¶ 22 *Dr. Robson*

¶ 23 Dr. David Robson submitted his report on November 13, 2013. He examined plaintiff and reviewed plaintiff's extensive medical records. He noted plaintiff's past medical history, including head injury, diabetes, mitral value replacement, abnormal heart rhythm, and arthritis, and his past surgical history, including back surgery, heart surgery, appendectomy, neck surgery, and left knee replacement. He concluded that plaintiff's injuries "sustained on July 5, 2009[,] and May 23, 2011, prevent him from performing the duties as a firefighter on a permanent basis according to the job description which was enclosed and reviewed."

¶ 24 Dr. Robson also prepared a supplemental report at the request of the Board regarding plaintiff's employment at U.S. Steel. Dr. Robson concluded that the newly furnished information that plaintiff works at the steel company did not change his opinion that plaintiff is disabled from his job as a firefighter.

¶ 25                                    *Dr. Katz*

¶ 26 As part of plaintiff's worker's compensation claim stemming from the July 5, 2009, overhead door accident, Dr. Richard Katz conducted an IME on plaintiff. Dr. Katz evaluated plaintiff on October 22, 2009. Dr. Katz reviewed plaintiff's medical records and diagnostic studies and concluded within a reasonable degree of medical certainty that plaintiff suffers from chronic knee degenerative problems which predate his work injury and any surgery for knee problems would not be work-related. Dr. Katz found that plaintiff suffered a neck sprain related to the accident, received appropriate treatment for the neck sprain, and already reached maximum medical capacity. Dr. Katz did not see any problem with plaintiff returning to work at the steel company, but found plaintiff, "a 56 year old man with triple bypass surgery, back fusion, and chronic degenerative disease requiring medication for knee pain," was not fit to be a fireman even prior to the July 5, 2009, work accident.

¶ 27                           Secondary Employment

¶ 28 Plaintiff's supervisor at U.S. Steel, Ricky Christoff, testified before the Board on June 14, 2014. He said plaintiff's current position "is listed under lubrication personnel," which requires plaintiff to lubricate equipment at the steel company. Machines require

9

daily, weekly, or monthly lubrication. Plaintiff is given a list of what requires lubrication. While plaintiff's daily duties are lubricating equipment, U.S. Steel can assign him other jobs, such as cleaning spills.

¶ 29 According to Mr. Christoff, plaintiff started working in his department in January 2014. While plaintiff provided the Board with his job description from a 1968 description from Granite City Steel, Christoff believed a more apt description came from a 2004 labor agreement with U.S. Steel. Christoff testified about plaintiff's work history and times plaintiff was off work for other injuries, including his injuries as a firefighter. U.S. Steel was unable to accommodate some of plaintiff's medical restrictions, and, as a result, plaintiff missed time from U.S. Steel. At the time of the hearing, plaintiff was working full time without restrictions at U.S. Steel.

¶ 30 Christoff testified that if employees have to lift more than 50 pounds as part of their job, it is the policy of the steel company to try to utilize tools or equipment on hand to move heavy equipment. He said sometimes employees are required to move 55 gallon drums, which can weigh up to 800 pounds, but there is a special drum for such moves. He testified plaintiff's duties necessitate that he occasionally climb ladders and stairs, stoop, and bend. According to Christoff, the only special clothing or uniform plaintiff might be required to wear is flame retardant clothing, nothing over 10 to 12 ounces in weight.

¶ 31                                Board's Decision

¶ 32    After three days of testimony and admission of 31 exhibits, the Board denied plaintiff's application for a line of duty disability.  The Board found that, while plaintiff is disabled from performing full unrestricted service to the fire department, his disability was not the result of an act of duty.  In support of its finding, the Board cited to Dr. Katz's IME report from October 2009, in which Dr. Katz found that plaintiff was non-duty disabled from performing his duties as a firefighter prior to July 5, 2009.  The Board went on to note that plaintiff "met the burden of proof for an alternative 'not on duty' disability pension," but because plaintiff did not seek a not on duty disability pension, he could not be awarded such a pension.  The Board also noted plaintiff is fully vested and would be entitled to a retirement pension upon written request to the Board.

¶ 33                               Administrative Review

¶ 34    Plaintiff filed a petition in the circuit court of St. Clair County for administrative review of the Board's decision.  The circuit court issued a written order reversing the Board's decision and awarding plaintiff a line of duty disability pension.  The circuit court pointed out that instead of relying on the three physicians the Board appointed to conduct IMEs on plaintiff, the Board relied on Dr. Katz's opinion, a doctor who had not seen plaintiff since October 2009 when the City hired him to give a report for its defense of plaintiff's worker's compensation claim.  In reversing the Board's decision, the circuit court specifically stated as follows:

11

"The Board's decision is clearly erroneous as it relies exclusively on the discredited report of Dr. Katz. The Court is left with the definite and firm conviction that a mistake has been committed by the Board. In addition, the Board's finding that [plaintiff] failed to meet his burden of proof is against the manifest weight of the evidence. That evidence establishes that [plaintiff] was injured while performing an act of duty and as the result of the on-the-job injuries which resulted in his permanent disability. This disability has and will continue to prevent him from performing the essential functions as a firefighter with the City of East St. Louis Fire Department. The decision of the Board is hereby reversed. The Board's [*sic*] is hereby ordered to award [plaintiff] a line-of-duty pension."

The City, not the Board or other defendants, filed the instant appeal.

¶ 35                                    ANALYSIS

¶ 36    The first issue raised on appeal is whether the evidence supported the Board's decision that no on-duty incidents caused or were a contributing factor to plaintiff's disability. The City contends the Board's decision to consider the opinion of Dr. Katz was proper, as was its decision to give less weight to the opinions of the three physicians selected by the Board to perform IMEs on plaintiff. The City further contends the Board properly gave less weight to plaintiff's testimony and properly found that the manifest weight of the evidence supported a finding that plaintiff failed to meet his burden of proof that he sustained a line of duty disability. We disagree.

¶ 37    We are aware that when reviewing administrative findings, we review the final decision of the administrative agency and not the determination of the circuit court.

12

*Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504, 877 N.E.2d 1101, 1112 (2007). In an administrative review proceeding, the plaintiff bears the burden of proof. *Id.* at 505, 877 N.E.2d at 1113. Rulings on questions of fact, including whether a work injury is a cause of a claimant's disability, will be reversed only if the agency's decision is against the manifest weight of the evidence. *Id*. at 504, 877 N.E.2d at 1112; *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 22, 6 N.E.3d 782. An agency's decision " 'is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' " *Wade*, 226 Ill. 2d at 504, 877 N.E.2d at 1112-13 (quoting *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992)).

¶ 38    In considering an agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534, 870 N.E.2d 273, 294 (2006). However, the deference accorded an agency's decision "is not without limitation." *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 96, 958 N.E.2d 315. A reviewing court may reject an agency's findings if such findings clearly contradict the manifest weight of the evidence. *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211-12, 857 N.E.2d 777, 782 (2006). "Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight." *Id*. If, after

examining the entire record, we believe the manifest weight of the evidence favors the party who did not prevail, then it is our duty to reverse. *Id.* at 210, 857 N.E.2d at 781.

¶ 39 Section 4-110 of the Code states that a firefighter is entitled to a line of duty disability if, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found \*\*\* to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension." 40 ILCS 5/4-110 (West 2014). The Code defines an "act of duty" as: "Any act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department, or any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person." 40 ILCS 5/6-110 (West 2014). In contrast, section 4-111 of the Code states that a firefighter is entitled to a not in duty disability pension if he or she "becomes disabled as a result of any cause other than an act of duty, and who is found \*\*\* to be physically or mentally disabled so as to render necessary his or her being placed on disability pension." 40 ILCS 5/4-111 (West 2014).

¶ 40 It is important to note that "a disability may result from multiple causes," and in order to obtain a line of duty disability pension, a plaintiff must prove that the duty-related injury " 'is a causative factor contributing to the claimant's disability.' " *Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 27, 7 N.E.3d 179 (quoting *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550, 776 N.E.2d 703, 709 (2002)). A line of duty disability pension may also be based upon the duty-related aggravation of a

14

claimant's preexisting physical condition. *Carrillo*, 2014 IL App (1st) 130656, ¶ 23, 6 N.E.3d 782. It is a pension board's function to resolve conflicts in the medical evidence. *Swanson v. Board of Trustees of the Flossmoor Police Pension Fund*, 2014 IL App (1st) 130561, ¶ 31, 7 N.E.3d 124. However, a pension board should not rely on the opinion of a doctor who "failed to consider or to base his opinion on relevant, material evidence that was key under the circumstances of [the] case." (Internal quotation marks omitted.) *Wade*, 226 Ill. 2d at 507, 877 N.E.2d at 1114.

¶ 41 In the instant case, the Board found plaintiff did not meet his burden to establish a right to a line of duty disability pension, but did meet his burden to establish a not in duty pension. In making this determination, the Board relied on the opinion of Dr. Richard Katz. However, Dr. Katz had not examined plaintiff since October 22, 2009, when he was hired by the City to perform an IME on plaintiff in conjunction with plaintiff's worker's compensation claim. The worker's compensation claim pertained to the July 5, 2009, accident in which plaintiff was hit by an overhead garage door while fighting a fire at a commercial building.

¶ 42 Dr. Katz specifically opined that plaintiff was non-duty disabled from performing his duties as a firefighter *prior* to the July 5, 2009, accident. Despite Dr. Katz's opinion that plaintiff was disabled even before the first injury, plaintiff was given a full duty release and returned to his job as a firefighter with the City. While performing his firefighting duties, plaintiff was injured a second time on March 23, 2011, when a heavy object, either a brick or a rock, flew out of the top of a building that was on fire and hit him in the head.

15

¶ 43   The circuit court correctly pointed out that Dr. Katz was not in actuality an impartial physician, but a paid expert who was hired to testify on behalf of the City in its defense of plaintiff's worker's compensation claim based upon plaintiff's July 5, 2009, accident.  The Board was wrong to rely on the opinion of Dr. Katz, who was unaware of key relevant and material facts in this case.  Dr. Katz's opinion that plaintiff was non-duty disabled prior to July 5, 2009, is inconsistent with the facts of this case which show that plaintiff was able to return to work as a firefighter not only after the first accident, but also after the second accident.  Interestingly, the City did not rely on Dr. Katz's report with regard to plaintiff's worker's compensation claim, as the City allowed plaintiff to return to work as a firefighter after he was released by his doctor following his first injury.

¶ 44   Nevertheless, five years after Dr. Katz filed his report, the Board used Dr. Katz's five-year-old opinion to support its finding that plaintiff was not entitled to a line of duty disability pension, while ignoring the opinions of the three doctors it hired to examine plaintiff in conjunction with the instant litigation.  Section 4-112 of the Code states in pertinent part:

> "A disability pension shall not be paid until disability has been established by the board by examinations of the firefighter at pension fund expense by 3 physicians selected by the board and such other evidence as the board deems necessary.  The 3 physicians *** need not agree as to the existence of any disability or the nature and extent of a disability."  40 ILCS 5/4-112 (West 2014).

16

In the instant case, all three of the Board's chosen doctors—Drs. Wilkey, George, and Robson—concluded that plaintiff is totally disabled from his job as a firefighter as a result of the two on-duty injuries that are the subject of this litigation.

¶ 45 The City contends the three doctor's opinions were based on incomplete and inaccurate information regarding pertinent facts such as plaintiff's preexisting problems, the nonexistence of any permanent restrictions, and inaccurate information from applicant regarding his job duties as a laborer for U.S. Steel. However, our review of the three doctors' reports indicates they were all aware of defendant's preexisting medical conditions—including heart disease, diabetes, and arthritis—as well as plaintiff's prior back surgeries, heart surgeries, and knee replacement.

¶ 46 Moreover, contrary to the Board's and the City's assertion, plaintiff was candid with these doctors about his secondary employment with U.S. Steel. For example, Dr. Wilkey's initial report specifically states:

> "[Plaintiff] does report that he works in the steel mill. This is a second job that he has obtained. He does not have to wear any headgear short of a plastic helmet. He says this is well tolerated and does not cause significant neck pain. He does not use any narcotics during his work in the steel mill."

We also point out that both Dr. Wilkey and Dr. Robson prepared supplemental reports at the Board's request in which they concluded that plaintiff's continued work at U.S. Steel did not change their opinions that plaintiff is totally disabled from performing his job as a firefighter due to the cumulative effects of the two accidents.

17

¶ 47 The Board's reliance on Dr. Katz's medical opinion, which did not address all the facts of the case, makes the instant case similar to our supreme court's decision in *Wade*. In that case, the plaintiff, a police officer with a preexisting condition in his right knee, fell while escorting a prisoner and sustained two tears in his right knee. *Wade*, 226 Ill.2d at 491-92, 877 N.E.2d at 1105. The plaintiff underwent two surgeries, but was unable to return to full duty. *Id*. at 491, 877 N.E.2d at 1105. Four doctors found that the plaintiff was disabled and that his injury was caused or possibly aggravated by the work incident. *Id*. at 496-501, 877 N.E.2d at 1108-10. A fifth doctor found that the plaintiff was not disabled and that his injury resulted from his preexisting condition. *Id*. at 501, 877 N.E.2d at 1110. The Board denied the plaintiff a line of duty disability pension based on the fifth doctor's opinion. *Id*. at 501, 877 N.E.2d at 1111. On review, the court found the doctor's report misstated the evidence and showed he "selectively disregarded, failed to recall, or never reviewed portions of plaintiff's medical records." (Internal quotation marks omitted.) *Id*. at 506, 877 N.E.2d at 1113. Therefore, the court found the Board erred in relying solely on that doctor's opinion to deny the line of duty disability pension. *Id*. at 507, 877 N.E.2d at 1114.

¶ 48 Here, as in *Wade*, Dr. Katz did not base his opinion on all the evidence relevant and material to plaintiff's head and neck injuries which were the basis of his disability claim. This case is even more egregious than *Wade* because Dr. Katz did not even examine plaintiff after the second injury and was unaware plaintiff returned to work after the first injury. The Board, therefore, erred in relying on the opinion of Dr. Katz, a non-

18

Board selected doctor hired years previously by the City in defense of plaintiff's worker's compensation claim, while ignoring the opinions of its three selected doctors.

¶ 49    "There is no requirement that the duty-related incident be the originating or primary cause of the injury, although a sufficient nexus between the injury and the performance of the duty must exist." *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818, 630 N.E.2d 446, 449 (1993). Here, other than the opinion of Dr. Katz, there is no medical evidence to support a finding that plaintiff was not disabled in his line of duty as a firefighter. While the evidence showed plaintiff suffers from a variety of maladies, there is a sufficient nexus between the two injuries plaintiff suffered on the job and his inability to continue fighting fires. The reports of the Drs. Wilkey, George, and Robson, along with the testimony of plaintiff, establish the essential nexus.

¶ 50    *Wade* makes it clear that a pension board's decision is against the manifest weight of the evidence where the agency decision selectively relies heavily on one medical expert's testimony to the exclusion of other medical opinions and documentation. That is exactly what happened here. Accordingly, the Board's reliance on Dr. Katz's opinion that plaintiff failed to meet his burden of proof that he sustained a line of duty disability is against the manifest weight of the evidence.

¶ 51    The second issue raised in this appeal is whether the circuit court applied the wrong standard of review when it found the Board's decision "clearly erroneous." The City contends this case involves a question of fact and not a question of law, and,

19

therefore, the standard of review is "manifest weight of the evidence," not "clearly erroneous." The City insists that the circuit court's order should be reversed and the Board's decision reinstated because its decision was supported by the manifest weight of the evidence. We disagree.

¶ 52   The correct standard of review depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05, 692 N.E.2d 295, 302 (1998). Rulings on question of fact will be reversed if they are against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 532, 870 N.E.2d at 292-93. "Factual findings are against the manifest weight of the evidence only where 'it is clearly evident the [agency] erred and should have reached the opposite conclusion.' " *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 721, 807 N.E.2d 1276, 1282 (2004) (quoting *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101, 109, 685 N.E.2d 412, 417 (1997)). In contrast, questions of law are subject to *de novo* review, and a mixed question of law and fact is reviewed under the clearly erroneous standard. *Marconi*, 225 Ill. 2d at 532, 870 N.E.2d at 293.

¶ 53   The instant appeal presents the question of whether the evidence in the record supports the Board's denial of plaintiff's application for a disability pension. This is a question of fact. See *Marconi*, 225 Ill. 2d at 534, 870 N.E.2d at 293. We have previously concluded the Board's decision was not supported by the manifest weight of the evidence.

20

¶ 54    In its well reasoned and thorough order, the circuit court specifically stated, "The Board's decision is clearly erroneous as it relies exclusively on the discredited report of Dr. Katz."  The circuit court went on to state that "the Board's finding that [plaintiff] failed to meet his burden of proof is against the manifest weight of the evidence."  We agree with the circuit court that the Board's decision is against the manifest weight of the evidence because the opposite conclusion is clearly evident.  Plaintiff met his burden of proof and established his right to a line of duty disability pension.  We see no need to address this issue further.

¶ 55    The final issue raised by the City is that the circuit court erred in entering its order reversing the decision of the Board and in finding plaintiff entitled to a line of duty disability under the Code.  The City insists that statements made by the circuit court during oral arguments show that the circuit court refused to examine all the evidence and refused to consider its argument that even though plaintiff is disabled, his disability is unrelated to the two accidents.  Again, we disagree.

¶ 56    The City cannot have it both ways.  In its brief, the City specifically argues the Board was within its rights to determine plaintiff failed to meet his burden of proof that he sustained line of duty disability because none of the 13 treating doctors he sought treatment with after the two work accidents provided him any type of permanent restrictions after he was fully released to return to work as a firefighter nor did plaintiff seek any treatment with them after he decided he could no longer work.  This was the same argument the City's attorney attempted to raise before the circuit court.  The circuit court was aggravated by this argument because the entire defense of this case was based

upon Dr. Katz's October 22, 2009, report which concluded that plaintiff was disabled prior to July 5, 2009. The trial court shut down the City's attorney, stating as follows:

> "You're back to the point where you're saying the doctors were wrong in concluding disability. I just ruled that you cannot take that position in this action because it's not. It is clearly against the manifest weight of the evidence. You have no opinion other than you're poking at the other's opinions that establishes something that the burden of proof is clearly overwhelmed. You can't establish anything with your cross examination of a report when *** this whole thing started with the stipulation that this man was disabled. You can't come in and argue he's not disabled."

We agree with the circuit court that the City's argument that defendant was not disabled was disingenuous in light of the fact the defense of the case relied on Dr. Katz's report that plaintiff was disabled prior to the first accident.

¶ 57 However, despite Dr. Katz's opinion, plaintiff went back to work as a firefighter not only after the first accident, but the second accident as well. Plaintiff testified he quit working in November 2012, because he believed he could no longer work with the pain and wear the heavy gear and equipment necessary to properly fight fires. Plaintiff felt he would be jeopardizing the health and safety of his colleagues if he continued to work. Under these circumstances, the City has failed to convince us that the circuit court erred in reversing the Board's decision. After examining the entire record, we find the manifest weight of the evidence supports plaintiff's line of duty disability request.

22

¶ 58                              CONCLUSION

¶ 59   For the foregoing reasons, we find plaintiff is entitled to a line of duty disability pension. We, therefore, affirm the judgment of the circuit court of St. Clair County reversing the Board's decision to deny plaintiff a line of duty pension.


¶ 60   Affirmed.

2016 IL App (5th) 160006

NO. 5-16-0006

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| LARRY HOPKINS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-MR-512 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| FIREFIGHTERS PENSION FUND OF THE | ) | |
| CITY OF EAST ST. LOUIS, ILLINOIS; | ) | |
| JOHNNIE ANTHONY, Board President, | ) | |
| Board of Trustees of the Firefighters Pension | ) | |
| Fund of the City of East St. Louis, Illinois; | ) | |
| and GEORGE McCLELLAN, JR., WILLIAM | ) | |
| FENNOY, MICHAEL DILL, and RAYMOND | ) | |
| MIX, Board of Trustees of the Firefighters | ) | |
| Pension Fund of the City of East St. Louis, | ) | |
| Illinois, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | Honorable |
| (The City of East St. Louis, Intervenor- | ) | Robert P. LeChien, |
| Appellant). | ) | Judge, presiding. |

Opinion Filed: November 10, 2016

| | |
|---|---|
| **Justices:** | Honorable Richard P. Goldenhersh, J. |
| | Honorable Thomas M. Welch, J., and Honorable Melissa A. Chapman, J., Concur |

| | |
|---|---|
| **Attorney for Appellant** | Jennifer L. Barbieri, Clayborne, Sabo & Wagner, LLP, 525 West Main Street, Suite 105, Belleville, IL 62220 |

| | |
|---|---|
| **Attorneys for Appellees** | Robert G. Jones, The Jones Law Firm, P.C., 111 West Washington Street, Belleville, IL 62220 (attorney for Larry Hopkins); Dennis J. Orsey, Attorney at Law, 3388 Maryville Road, Suite A, Granite City, IL 62040 (attorney for Board of Trustees of Firefighters Pension Fund) |