NOTICE

Decision filed 09/15/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0134

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| KENNETH BOWLIN, | ) Appeal from the |
| | ) Circuit Court of |
| **P**laintiff-**A**ppellant, | ) **J**ackson **C**ounty. |
| | ) |
| v. | ) No. 04-MR-74 |
| | ) |
| MURPHYSBORO FIREFIGHTERS | ) |
| PENSION BOARD OF TRUSTEES, | ) |
| RICHARD MARTIN, JERRY McCLERREN, | ) |
| STEVE PORTER, KEVIN REEVES, | ) |
| STEVE SWAFFORD, and RON WILLIAMS, | ) Honorable |
| | ) E. Dan Kimmel, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Kenneth Bowlin, appeals from an order of the circuit court of Jackson County that, upon administrative review, affirmed the decision by the defendant Murphysboro Firefighters Pension Board of Trustees (the Board), denying the plaintiff's application for duty-disability pension benefits under section 4-112 of the Illinois Pension Code (the Code) (40 ILCS 5/4-112 (West 2000)). For the reasons that follow, we find that the opposite conclusion is clearly evident and that therefore the Board's decision is against the manifest weight of the evidence; accordingly, we reverse.

The record reveals that Bowlin suffered two work-related back injuries while working as a firefighter for the Murphysboro fire department. On April 2, 2002, he fell 15 feet onto his back. Several months later he returned to work and was injured again on March 7, 2003, when he was using a 75-pound hydraulic cutting tool to remove a victim trapped in a vehicle. Both injuries were documented, and there was no dispute regarding these occurrences. It

1

was also undisputed that Bowlin suffered from a congenital spondylolisthesis at the L5-S1 level of his lumbar spine, confirmed by an MRI.

Bowlin was treated and evaluated by a number of physicians for his back pain. Dr. Kitchens, a neurosurgeon, provided and managed most of Bowlin's care. Bowlin received epidural steroid injections and physical therapy. On June 19, 2003, Dr. Kitchens placed Bowlin on permanent medium-work-demand restrictions, allowing him to occasionally lift 20 to 50 pounds and to occasionally bend, twist, and climb. He believed that Bowlin was a surgical candidate for a laminectomy and fusion. Dr. Kitchens referred Bowlin to a physiatrist for a functional capacity evaluation.[1] The physiatrist placed Bowlin in the medium job capacity with permanent restrictions. Dr. Craig Furry had been Bowlin's primary care physician since 1991. He, too, was of the opinion that Bowlin suffered a work-related injury that left him with permanent restrictions.

Bowlin applied for duty-disability pension benefits and workers' compensation benefits, alleging that he was disabled as the result of the two line-of-duty injuries.

Pursuant to section 4-112 of the Code (40 ILCS 5/4-112 (West 2000)), Bowlin was examined by three physicians chosen by the Board.

---

[1]Neither this physician's name nor his medical records appear in the court record, but the findings of the functional capacity evaluation are referenced in other medical records relied upon by the Board.

On March 4, 2004, Dr. Robert I. Martin, a specialist in occupational medicine, reported that Bowlin was disabled for service as a firefighter and that his disability was the result of performing an act of duty. He opined that Bowlin should be permanently restricted from performing fire-suppression duties. Dr. Martin described how heavy-lifting activities or other activities stressful on the lower back cause someone with spondylolisthesis to have a shifting of the vertebrae. Each episode worsens the instability until it becomes permanent. He believed that Bowlin's instability had become permanent because of his two work injuries, and he recommended an L5-S1 surgical fusion. However, he would not recommend that Bowlin return to firefighting even after a successful surgical fusion. Dr. Martin recommended that if Bowlin wanted to continue in the fire service, it would need to be lighter work, such as fire investigations.

On March 10, 2004, Dr. David J. Fletcher, a specialist in occupational and preventative medicine, also found that Bowlin was disabled as a result of an act of duty. Dr. Fletcher stated: "[T]he patient works as a fire fighter. This specialist is very familiar with the critical job demands of a fire fighter." Dr. Fletcher's further opinions regarding his findings and diagnosis composed an 11-page narrative summary. Dr. Fletcher found that Bowlin could perform modified duties at the medium-work level with occasional lifting of up to 50 pounds or he could serve as a fire investigator. He also opined that Bowlin could possibly return to regular work as a firefighter if he underwent lumbar fusion surgery.

On May 5, 2004, Dr. Sherwyn J. Wayne, an orthopedist, examined Bowlin. He reported that Bowlin demonstrated a mild-to-moderate degree of partial disability due to preexistent spondylolisthesis and that Bowlin's symptoms were compatible with the condition. He also reported that Bowlin is not a candidate for surgical intervention. According to Dr. Wayne, "whether Bowlin returns to his prior occupation as a firefighter or to a new[,] less physically demanding occupation[] relates entirely to the patient's level of

3

comfort and motivation."

On July 15, 2004, a hearing was held on Bowlin's application for a duty disability, in front of the six members of the Board. Bowlin's medical records from the examining physicians and treating physicians were admitted into evidence. A videotape of a white-water rafting trip in which Bowlin participated was also admitted into evidence.

During the hearing, Bowlin testified that he has occasional lower-back pain, aggravated by exercise. He testified that some days are better than others and that he was being treated conservatively with prescription medication. He further testified he did not feel that he could return to work as a full-time firefighter because of his lower-back pain and because he can no longer perform the duties of a firefighter. Bowlin testified that he is currently unemployed but that he is receiving workers' compensation benefits.

When asked about the white-water rafting trip in September 2003, Bowlin testified that at the time of the trip his medical restrictions prohibited lifting, pushing, pulling, or tugging more than 50 pounds. He testified that he did not exceed those restrictions during the trip. According to Bowlin, his doctors did not tell him that he should not go white-water rafting or engage in any other recreational activities. His understanding of the physicians' limitations was that he could engage in household or recreational activities so long as he did not exceed the weight and/or physical restrictions. Bowlin also testified that he had gone elk hunting since his injuries but that he had adjusted his technique to accommodate his condition and that someone else dragged the animal. He further testified that he no longer goes ice diving, scuba diving, rock climbing, or rapelling.

Captain Ronald Clark, a fellow firefighter, testified that he had gone on the white-water rafting trip with Bowlin and that Bowlin sat in a safe position in the raft so that he was protected and did not have to do the kind of work the others did. According to Clark, Bowlin did not complain of any pain while on the trip. Clark further testified that due to Bowlin's

4

physical limitations he does not engage in any other recreational activities with Bowlin anymore, such as diving and rock climbing.

At the conclusion of the hearing, the Board unanimously denied Bowlin's application for duty-disability pension benefits. On August 31, 2004, the Board issued a written final administrative decision. In its written decision, the Board explained its decision by noting that two of the three examining physicians reported that Bowlin was not disabled from service to the fire department. Dr. Wayne determined that whether Bowlin returned to work was a matter of comfort and motivation, and Dr. Fletcher determined that Bowlin could do some jobs in the fire department. According to the Board, the evidence that Bowlin maintains an active schedule and that he engages in strenuous activity is consistent with Dr. Wayne's observations. After reviewing the videotape of the white-water rafting trip, the Board felt that the testimony of Bowlin and Clark misrepresented the physical exertion exhibited by Bowlin during the rafting trip. The Board believed that the videotape revealed that Bowlin actively participated in the white-water rafting trip and that those activities require some exertion and place a strain on the back.

The Board stated that Bowlin had not met his burden to prove that he is permanently disabled for service in the fire department. The Board cited *Peterson v. Board of Trustees of the Firemen's Pension Fund of the City of Des Plaines*, 5 Ill. App. 3d 180, 281 N.E.2d 368 (1971), for the proposition that a person must be disabled from service to the fire department, not just from firefighting, to be entitled to a duty-disability pension under section 4-110 of the Code (40 ILCS 5/4-110 (West 2000)).

Bowlin appealed the Board's decision to the circuit court of Jackson County. In an order dated February 16, 2005, the circuit court affirmed the Board's decision. On March 10, 2005, Bowlin filed a timely notice of appeal.

We turn now to the only issue on appeal. Bowlin argues that the Board's decision

5

denying his application for duty-disability pension benefits was against the manifest weight of the evidence. In support of his argument, Bowlin contends as follows: (1) that the Board erred when it relied upon *Peterson v. Board of Trustees of the Firemen's Pension Fund of the City of Des Plaines*, because there is no evidence in the record that would suggest that the City of Murphysboro could accommodate him in any other position than that of a full-duty firefighter, (2) that the Board did not attach proper weight to Dr. Wayne's testimony because his report had been prepared at the request of the workers' compensation carrier and that Dr. Wayne's report was inconsistent in that he reported that the plaintiff demonstrates a mild-to-moderate degree of permanent partial disability, while he also reported that the plaintiff can return to unrestricted duties as a firefighter, and (3) that the Board based its decision upon his "active schedule post[]injury" and did not examine the evidence contained in his medical records.

On appeal, we review the administrative agency's decision and not the circuit court's determination. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560, 810 N.E.2d 228, 232-33 (2004). The scope of judicial review is limited to determining whether the findings and decision of the administrative agency are against the manifest weight of the evidence. *Polk v. Board of Trustees of the Police Pension Fund of the City of Park Ridge*, 253 Ill. App. 3d 525, 536, 624 N.E.2d 1366, 1374 (1993). An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Whelchel v. Edgar*, 195 Ill. App. 3d 406, 409, 552 N.E.2d 394, 396 (1990). If after examining the entire record we believe that the manifest weight of the evidence favors the party who did not prevail, then it is our duty to reverse the decision. *Derringer v. Civil Service Comm'n*, 66 Ill. App. 3d 239, 241, 383 N.E.2d 771, 773 (1978).

Section 4-110 of the Code provides:

"If a firefighter, as the result of sickness, accident[,] or injury incurred in or

6

resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, pursuant to Section 4-112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter shall be entitled to a disability pension ***." 40 ILCS 5/4-110 (West 2000).

Section 4-112 of the Code provides:

"A disability pension shall not be paid until disability has been established by the board by examinations of the firefighter at pension fund expense by 3 physicians selected by the board and such other evidence as the board deems necessary." 40 ILCS 5/4-112 (West 2000).

Bowlin first contends that the Board erred when it relied upon *Peterson v. Board of Trustees of the Firemen's Pension Fund of the City of Des Plaines*. We agree and find that the Board's reliance on *Peterson* is misplaced. The facts in *Peterson* are inapposite to those in the instant case. In *Peterson*, a fireman *was* found to be permanently injured in the line of duty, and as a result, he was unable to return to his previous duties as a firefighter. Nevertheless, the pension board denied his application for a duty disability because there was evidence of other duties within the fire-prevention bureau of the fire department that could be performed by a person with the physical and mental capacities of the applicant. *Peterson*, 5 Ill. App. 3d at 182, 281 N.E.2d at 369-70. Contrary to the facts in *Peterson*, here the Board did not find that Bowlin was physically disabled from returning to work as a firefighter. Furthermore, there was no evidence put forth at the hearing that there were other duties available to be performed at the fire department other than firefighting. For those reasons we find *Peterson* inapplicable to the case before us. Because the Board found that Bowlin was not disabled in any capacity and because the Board elected to put on no evidence of lesser duties currently available in the department other than firefighting, we presume that no such

7

alternate job capacities exist and we do not reach the issue of Bowlin's abilities to perform other, less strenuous department jobs.

Next, Bowlin contends that the Board attached too much weight to Dr. Wayne's testimony because his report was prepared at the request of the workers' compensation carrier and that Dr. Wayne's report was inconsistent in that he reported that Bowlin demonstrates a mild-to-moderate degree of permanent partial disability, while he also reported that Bowlin can return to unrestricted duties as a firefighter.

We find it immaterial whether Dr. Wayne's testimony was at the request of the Board or of the workers' compensation carrier. The Board was entitled by section 4-112 of the Code to select up to three physicians to examine Bowlin and render opinions. Further, the Board was entitled to consider other evidence it deemed necessary. 40 ILCS 5/4-112 (West 2000).

We do, however, find it inconsistent that Dr. Wayne found Bowlin to have a mild-to-moderate degree of permanent partial disability but also be capable of returning to the highly physically demanding job of firefighting without restrictions. Three of his treating physicians and the other two examining physicians chosen by the Board formed the opinion that Bowlin could not return to his previous firefighting duties. The Board itself conceded in its memorandum of law in support of its decision that Dr. Fletcher and Dr. Martin offered opinions that Bowlin met the statutory qualifications for a duty-disability pension. Dr. Fletcher made special mention in his report that he was very familiar with the critical demands of a firefighter. All five of the other physicians, apart from Dr. Wayne, were of the opinion that Bowlin should be restricted to a 50-pound weight limitation, placing him in the medium-work-level capacity.

As previously noted, we are mindful of the rule that we are limited in our review. However our review cannot amount to a rubber stamp of the proceedings below merely

8

because the Board heard witnesses, reviewed records, and made the requisite findings. *Brown Shoe Co. v. Gordon*, 405 Ill. 384, 392, 91 N.E.2d 381, 385 (1950); *Drezner v. Civil Service Comm'n*, 398 Ill. 219, 231, 75 N.E.2d 303, 309 (1947). Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight. *Viera v. Illinois Racing Board*, 65 Ill. App. 3d 94, 100, 382 N.E.2d 462, 467 (1978) (relying on *Corn Products Refining Co. v. Industrial Comm'n*, 6 Ill. 2d 439, 443, 128 N.E.2d 919, 922 (1955)). A reviewing court will not hesitate to grant relief where the record does not show evidentiary support for the agency's determination. *Basketfield v. Police Board of the City of Chicago*, 56 Ill. 2d 351, 359, 307 N.E.2d 371, 375 (1974).

In the instant case, while the Board's decision is supported by some evidence, the opinion of Dr. Wayne, there is nothing in the record or in the Board's findings that supports the Board's reliance on only Dr. Wayne's opinion over the opinions of the five other doctors who reached the opposite conclusion. Because none of these doctors testified at the hearing, the Board's conclusions regarding the doctors' opinions could not have hinged on any credibility issues outside of the medical reports and records. It is noteworthy that three of the doctors who found Bowlin disabled from unrestricted duty were treating physicians and had the benefit of assessing Bowlin through a course of treatment. Dr. Martin and Dr. Fletcher, the other two examining doctors selected by the Board, were adamant in their opinion that Bowlin could not resume his duties unrestricted. Additionally, Dr. Wayne's own findings are called into question because he finds Bowlin to have a "mild to moderate degree of permanent partial disability," but at the same time he inexplicably states that Bowlin's ability to perform the heavy-work-level capacity of firefighting depends entirely on his "level of comfort and motivation." For all these reasons, we believe that the record as a whole does not support Dr. Wayne's opinion. Consequently, we find the Board's reliance on this opinion

arbitrary and untenable.

Bowlin's final area of contention is that the Board erred when it based its decision in part upon his "active schedule post[]injury" and did not examine the evidence contained in his medical records. It appears that Bowlin's recreational activities did improperly influence the Board's decision. The Board stated in its final administrative decision that Bowlin "has gone elk hunting, a rigorous activity," and also that in viewing the rafting video it found that Bowlin had been engaged in "activities which require some exertion[,] and place strain on the back." Bowlin testified about his elk hunting trip, stating that he had adapted his hunting techniques to accommodate his condition and that someone else dragged the animal. There was no indication from Bowlin's testimony that his hunting trip placed any undue strain on his back. With regards to the white-water rafting trip, the video does not reveal exertion by any participant that comes close to exceeding the medium-work-level capacity—to occasionally lift up to 50 pounds and to occasionally bend, twist, and climb. Bowlin also testified to recreational activities that he no longer engaged in because of his condition: scuba diving, ice diving, rock climbing, and rapelling. Additionally, Bowlin did not attempt to hide these activities from his physicians or the fire department. None of the physicians who saw Bowlin instructed him to avoid recreational activities that fit in with the medium-work-level capacity. For the Board to equate "activities which require some exertion[] and place strain on the back" to evidence that Bowlin can perform the high-work-level capacity required of a firefighter amounts to an impermissible substitution of the Board members' lay opinions for the medical opinions of the five physicians finding otherwise. It seems apparent that Bowlin is a physically active person who enjoys an outdoor lifestyle. This is not surprising for someone who has chosen the profession of firefighting. While it may seem unfair to the Board that Bowlin is still able to enjoy some of his former recreational activities and at the same time be eligible for a disability pension, the Board's only statutory consideration should

10

be whether, based on the evidence presented, he can perform those work-related duties. Even if Bowlin is incapable of performing the highly strenuous duties involved in firefighting, he is not relegated to sitting in front of a television. The fact that Bowlin may still lead a somewhat full life is immaterial to the Board's inquiry.

For the foregoing reasons, we find that it was clearly evident from the totality of the evidence that Bowlin was disabled from returning to his firefighting duties, and therefore the Board's decision was against the manifest weight of the evidence.

Reversed.

WELCH and HOPKINS, JJ., concur.

NO. 5-05-0134

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KENNETH BOWLIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| **Plaintiff-Appellant,** | | **Jackson County.** |
| | ) | |
| v. | ) | No. 04-MR-74 |
| | ) | |
| MURPHYSBORO FIREFIGHTERS | ) | |
| PENSION BOARD OF TRUSTEES, | ) | |
| RICHARD MARTIN, JERRY McCLERREN, | ) | |
| STEVE PORTER, KEVIN REEVES, | ) | |
| STEVE SWAFFORD, and RON WILLIAMS, | ) | Honorable |
| | ) | E. Dan. Kimmel, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed**: September 15, 2006

_____

**Justices**: Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable Terrence J. Hopkins, J.,
Concur

_____

**Attorney**  William J. Connor, Connor Law Offices, 2160 S. Sixth Street, Suite C, Springfield,
**for**  IL 62703
**Appellant**

_____

**Attorney**  Donald M. Craven, Donald M. Craven, P.C., 1005 N. Seventh Street, Springfield,
**for**  IL 62702
**Appellees**

_____