2018 IL App (4th) 180196

NO. 4-18-0196

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 11, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARK ASHMORE, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| THE BOARD OF TRUSTEES OF THE | ) | No. 17MR429 |
| BLOOMINGTON POLICE PENSION FUND, | ) | |
|     Defendant-Appellee. | ) | The Honorable |
| | ) | Rebecca S. Foley, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In December 2015, plaintiff, Mark Ashmore, filed an application for disability

pension benefits. Plaintiff is a former Bloomington police officer, and his claim arose from a fall

that occurred while he was pushing a vehicle out of the snow. Plaintiff argued that he was injured

in an "act of duty" and was therefore entitled to a line-of-duty pension rather than a not-on-duty

pension. In June 2017, the Board of Trustees of the Bloomington Police Pension Fund (Board)

issued a written order in which it concluded that plaintiff was not disabled. Because the Board

concluded that plaintiff was not disabled, it did not consider whether his claim arose from an "act

of duty."

¶ 2        Plaintiff appeals, arguing (1) the Board's finding that he was not disabled was

against the manifest weight of the evidence and (2) he was injured in the performance of an "act

of duty." We conclude that the Board's finding that plaintiff was not disabled was against the

manifest weight of the evidence and that plaintiff was injured while performing an "act of duty."

¶ 3                                    I. BACKGROUND

¶ 4                          A. Plaintiff's Disability Application

¶ 5          In December 2015, plaintiff submitted an application for disability pension bene-fits. Plaintiff's claim arose from his pushing a vehicle out of the snow while he was working as a police officer. Plaintiff argued that he was injured in an "act of duty" and was therefore entitled to a line-of-duty pension rather than a not-on-duty pension.

¶ 6                                    B. Pension Board

¶ 7          In May 2016, October 2016, and January 2017, the Board conducted hearings on plaintiff's application for a disability pension.

¶ 8                                    1. *Plaintiff's Testimony*

¶ 9          The Bloomington Police Department hired plaintiff in March 1993. Upon entering the police force, plaintiff met the physical requirements of the police academy, which included bench-pressing 80% of his body weight. Plaintiff stated that he worked as a patrol officer throughout his career.

¶ 10          Plaintiff testified that on February 17, 2014, he responded to an abandoned vehi-cle that was stuck in the snow and blocking a driveway to an apartment complex. The car was partially obstructing traffic. Plaintiff called Paul Williams, a lieutenant with the Bloomington Police Department, to discuss whether he should call a tow company to move the vehicle. Plain-tiff testified that Williams did not order plaintiff to tow the vehicle nor did Williams order plain-tiff to push the vehicle. Plaintiff noted that assisting stranded motorists and pushing cars is often a routine part of his job.

¶ 11          After the phone call with Williams, the driver of the abandoned vehicle returned.

Plaintiff did not discuss with Williams whether he should push the vehicle. Plaintiff, assisted by another officer, pushed the vehicle out of the snow. While pushing, plaintiff slipped on ice and fell—putting all his weight on his left arm as he fell.

¶ 12 Plaintiff sought medical attention following the accident. His arm was not broken, but he had a sprain and a partial tear of the distal bicep. As a result, from May 2014 through February 2016, plaintiff underwent multiple surgeries, cortisone injections, Botox injections, and physical therapy in an attempt to alleviate the pain in his arm and shoulder. Nevertheless, plaintiff testified that none of these procedures helped. He testified that he was losing the ability to extend his arm and the range of motion in his arm. He further stated that he had difficulty grasping or putting weight on his left arm and that he often had difficulty with dexterity. Plaintiff believed that he could not return as a patrol officer because he could not protect himself against a perpetrator or assist a fellow officer if necessary. Plaintiff testified that Dr. Jeffrey Greenberg placed him on a permanent work restriction, which meant that he was not supposed to lift over five pounds with his left arm or engage in repetitive grasping with his left hand.

¶ 13 Plaintiff testified that after his fall in February 2014, he had been unable to return to "full-duty" as a patrol officer. He stated that he had been working "light-duty" functions, using vacation and sick leave, or collecting worker's compensation benefits since the accident. Plaintiff was fired from the Bloomington Police Department in April 2016 because he was unable to return to "full-duty" as a patrol officer. He stated that there was no permanent light-duty position available for him at the Bloomington Police Department.

¶ 14 Plaintiff also testified that a ganglion block treatment was denied by the worker's compensation insurance company. Elizabeth McCain, a claims processor with that company, later testified that plaintiff was not denied this treatment.

¶ 15                               2. *Paul Williams's Testimony*

¶ 16          Paul Williams, a Bloomington police lieutenant and plaintiff's supervisor, testified that plaintiff was injured while he was pushing a car that was stuck in the snow. Williams stated that pushing stranded cars was a part of plaintiff's job duties and that the police department did not have a policy which required stranded vehicles to be towed instead of pushed by police officers. Williams noted as follows:

> "[O]n that particular day, it was snowing heavily and *** the snow plows were not keeping up with the amount of snow that was on the road. The motorists were having a lot of trouble passing through the roads.

> We had a lot of situations that were related to abandoned vehicles and cars that were stuck in the snow and minor car accidents and things like that going on this day, and we had a lot of calls that were pending. We needed to *** keep things going kind of quick that morning.

>                               * * *

> I would say the police department generally doesn't like [officers to push stuck vehicles] because you can get yourself hurt or something, but there's no rule that says you can't [push a stuck car]. They don't like you to run into a burning building either, but we do sometimes. There's no rule against that says you can't."

¶ 17          Williams noted that he had a conversation with plaintiff regarding whether the abandoned vehicle should be towed. Williams further noted that he did not discuss whether plaintiff should push the vehicle after the driver of the vehicle returned.

¶ 18                          3. *Independent Medical Examiners*

¶ 19          The Board had previously appointed three independent medical examiners—Dr.

Joshua Alpert, Dr. David Anderson, and Dr. James Stiehl—to evaluate plaintiff. These doctors examined him during March and April of 2016 and submitted written reports to the Board.

¶ 20 Alpert certified plaintiff as disabled, noting that plaintiff "is still having pain. He is having stiffness. Clinical examination shows weakness and decreased motion of the elbow. Although there is a guarded possibility for improvement with additional Botox injections, the likely duration of this disability is likely permanent based on my experience treating patients with similar injuries." Alpert concluded that plaintiff's injury was the result of falling down while pushing the car stuck in the snow. Finally, Alpert concluded that "his disability from full and unrestricted police duties is likely to be permanent."

¶ 21 Anderson certified plaintiff as disabled. He noted that "I do not believe [plaintiff] can perform full and unrestricted police duties. He has significant decreased function and ongoing pain in the left upper extremity. *** At this point, the duration of [this] disability is ongoing and likely permanent." Anderson believed that plaintiff's injuries were the result of falling down while pushing the car.

¶ 22 Stiehl certified plaintiff as not disabled. Stiehl noted that "[plaintiff] continues to have chronic pain in his left shoulder. *** He has shooting pain into his left hand. He has a current restriction with no lifting over 5 pounds using his left upper extremity. *** The basic issue is that he continues to have chronic pain in the scar tissue over his left forearm[.]" Stiehl concluded that these issues arose from falling down while pushing the car stuck in the snow.

¶ 23 Stiehl stated that he "reviewed the job description *** for a patrol officer and *** the vast majority of [plaintiff's] requirements are administrative in nature." In concluding, Stiehl noted that "[t]he function of his left shoulder and his left elbow are left with permanent deficits. However, as I carefully review the above noted duty requirements, I do not believe that [plain-

tiff] is disabled at this point[.]"

¶ 24   The job description for a patrol officer—which Stiehl replied upon—is excerpted below as follows:

"The job of [a] [p]atrol [o]fficer is general duty [p]olice work in the protection of life and property, and the enforcement of laws and ordinances. The work involves preventive patrol, preliminary investigation, traffic enforcement and regulation, and preservation of social order and public peace by means of patrolling in cars or on foot in a designated area where the officer is accountable.

The delivery of service at the [p]olice [o]fficer level applies to the protection of life and property, prevention and suppression of crime, apprehension of criminal offenders, regulation and control of traffic, recovery of lost or stolen property, and preservation and maintenance of social order and public peace."

¶ 25   The job description also requires that patrol officers have the ability "to react quickly, almost instantaneously and effectively, as problem situations occur" and to "overcome any and all potential hazards."

¶ 26   4. *Dr. Greenberg's Report*

¶ 27   Greenberg's report was also admitted into evidence. In this report, Greenberg, who was the treating physician, noted that "[plaintiff] tells me that he has gone for 3 independent medical exams and each of the independent examiners, according to [plaintiff], have told him that he should file for disability and will not be able to return to his previous job activities." Greenberg ultimately concluded that plaintiff "has significant left arm dysfunction. My recommendation at this point in time is to consider him at maximal medical improvement. The restrictions that we previously implemented I would consider as permanent and they would be no

lifting greater than 5 pounds [with his left arm] and no repetitive or forceful gripping or grasping [with his left arm]."

¶ 28                                    5. *The Board's Findings*

¶ 29          In June 2017, the Board issued a written order in which it concluded that plaintiff was not disabled. The Board found plaintiff's testimony to be "less than credible." Regarding credibility, the Board noted an apparent discrepancy when Greenberg wrote "[plaintiff] tells me that he has gone for 3 independent medical exams and each of the independent examiners, according to [plaintiff], have told him that he should file for disability[.]" However, the Board noted that Stiehl, one of the independent examiners, certified plaintiff as not disabled. The Board also considered the apparent conflict regarding the ganglion block and whether it was offered to plaintiff. Finally, the Board concluded there was a discrepancy regarding whether plaintiff had contacted Williams about the abandoned car. Regarding plaintiff's injuries, the Board found Stiehl's report to be credible and placed "no weight" on the other medical reports.

¶ 30          Ultimately, the Board concluded that plaintiff was not disabled and denied his disability claim. Because the Board concluded that plaintiff was not disabled, it did not consider whether his claim arose from an "act of duty."

¶ 31                              C. Administrative Review

¶ 32          Later that month, plaintiff filed a complaint for administrative review. In February 2018, the circuit court affirmed the Board's decision.

¶ 33          This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35          Plaintiff appeals, arguing (1) the Board's finding that he was not disabled was against the manifest weight of the evidence and (2) he was injured in the performance of an "act

of duty." We address these issues in turn.

¶ 36                              A. The Types of Pensions

¶ 37          The police pension system created disability pensions for officers who are unable

to continue working due to a physical or mental disability. 40 ILCS 5/3-101 *et seq.* (West 2016).

As relevant to this case, disability pensions are either (1) line-of-duty pensions or (2) not-on-duty

pensions. See *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 553, 905

N.E.2d 831, 835 (2009) (discussing the various categories of police pensions). An officer is eli-

gible for a line-of-duty pension, which pays 65% of the officer's salary, when an officer is disa-

bled as a result of an act of duty. 40 ILCS 5/3-114.1(a) (West 2016). An officer is eligible for a

not-on-duty pension, which pays 50% of the officer's salary, if the officer becomes disabled be-

cause of any cause other than the performance of an act of duty. *Id.* § 3-114.2.

¶ 38                              B. The Board's Disability Finding

¶ 39          Plaintiff argues the Board's finding that he was not disabled was against the mani-

fest weight of the evidence. We agree.

¶ 40                              1. *The Applicable Law*

¶ 41          When reviewing administrative decisions, the appellate court reviews the final

decision of the administrative agency and not the determination of the circuit court. *Wade v. City

of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504, 877 N.E.2d 1101, 1112 (2007).

Whether a police officer is disabled is a factual determination reviewed under a manifest weight

of the evidence standard. *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*,

2011 IL App (1st) 102157, ¶ 94, 958 N.E.2d 315. "An agency's decision is against the manifest

weight of the evidence only if the opposite conclusion is clearly evident." (Internal quotation

marks omitted.) *Hopkins v. Board of Trustees of the Firefighters Pension Fund of the City of*

*East St. Louis*, 2016 IL App (5th) 160006, ¶ 37, 66 N.E.3d 540. Although a reviewing court gives considerable weight to an agency's factual and credibility determinations, the deference afforded is not without limit. *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 68, 17 N.E.3d 130. A reviewing court may set aside any findings which are against the manifest weight of the evidence. *Id.* An agency's decision can still be against the manifest weight of the evidence even if some evidence supports the agency's decision. *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211-12, 857 N.E.2d 777, 782 (2006).

¶ 42    In *Wade*, 226 Ill. 2d at 491, a police officer was injured while escorting a prisoner. The officer underwent two surgeries, but was unable to return to full duty. *Id.* at 491. The officer filed an application for a disability pension. *Id.* at 489. Four doctors found that plaintiff was disabled and that his injury was caused by a work-related incident. *Id.* at 496-500. A fifth doctor, Dr. Milgram, concluded that plaintiff was not disabled and that his injury was from a preexisting condition. *Id.* at 501. The pension board denied the officer a line-of-duty pension based upon Milgram's report. *Id.* The circuit court affirmed the pension board's decision. *Id.* at 489. The appellate court reversed the pension board, concluding that Milgram was not credible "because his conclusions were inconsistent with the facts available to him. We find that the Board erred in assigning greater weight to Dr. Milgram's opinion, because he failed to consider or to base his opinion on relevant, material evidence that was key under the circumstances of this case." *Wade v. City of North Chicago Police Pension Board*, 359 Ill. App. 3d 224, 230, 833 N.E.2d 427, 433 (2005). The supreme court agreed with the appellate court, concluding that the pension board's decision was against the manifest weight of the evidence because it improperly relied upon Milgram's opinion. *Wade*, 226 Ill. 2d at 507-08.

¶ 43                                    2. *This Case*

¶ 44          In this case, the Board found plaintiff was not disabled, basing that conclusion

primarily upon (1) Stiehl's report and (2) the Board's finding that plaintiff's testimony was "less

than credible." We disagree and conclude that the Board's finding that plaintiff was not disabled

is against the manifest weight of the evidence.

¶ 45          First, the Board erred in relying upon Stiehl's report. Three doctors concluded that

plaintiff was disabled and that his disability arose from his fall while pushing the stuck vehicle.

Alpert concluded that plaintiff "is still having pain. He is having stiffness. Clinical examination

shows weakness and decreased motion of the elbow. Although there is a guarded possibility for

improvement with additional Botox injections, the likely duration of this disability is likely per-

manent based on my experience treating patients with similar injuries." Anderson concluded that

"I do not believe [plaintiff] can perform full and unrestricted police duties. He has significant

decreased function and ongoing pain in the left upper extremity. *** At this point, the duration

of [this] disability is ongoing and likely permanent." Greenberg also concluded that plaintiff was

disabled, reasoning that plaintiff had "significant left arm dysfunction. *** The restrictions that

we previously implemented I would consider as permanent and they would be no lifting greater

than 5 pounds [with his left arm] and no repetitive or forceful gripping or grasping [with his left

arm]."

¶ 46          In contrast to the above medical opinions, Stiehl concluded that plaintiff was not

disabled. Critically, Stiehl did not dispute plaintiff's underlying medical condition, noting that

"[plaintiff] continues to have chronic pain in his left shoulder. *** He has shooting pain into his

left hand. He has a current restriction with no lifting over 5 pounds using his left upper extremi-

ty." However, Stiehl stated that he "reviewed the job description *** for a patrol officer and *** the vast majority of [plaintiff's] requirements are administrative in nature." Stiehl ultimately reasoned that "as I carefully review the above noted duty requirements, I do not believe that [plaintiff] is disabled at this point[.]" The Board relied upon Stiehl's report and found that plaintiff was not disabled.

¶ 47　　　　Similar to *Wade*, we conclude that Stiehl's report was not credible because it "failed to consider *** relevant, material evidence that was key under the circumstances of this case." (Internal quotation marks omitted.) *Id.* Stiehl apparently believed that plaintiff's job as a patrol officer was "administrative in nature." However, plaintiff's job description includes the "protection of life and property, prevention and suppression of crime, apprehension of criminal offenders, regulation and control of traffic, recovery of lost or stolen property, and preservation and maintenance of social order and public peace." Further, plaintiff is required to "react quickly, almost instantaneously and effectively, as problem situations occur" and have "the ability to overcome any and all potential hazards." Stiehl's conclusion that plaintiff's job was "administrative in nature" is objectively unreasonable, and his report is not credible because he failed to base his opinion on relevant, material evidence that was key under the circumstances of this case. *Id.* As a result, the Board's finding that Stiehl's report was credible was against the manifest weight of the evidence. *Id.*

¶ 48　　　　Second, the Board erred in finding plaintiff's testimony to be "less than credible." The Board apparently found plaintiff's testimony to be less than credible because of minor inconsistencies regarding his medical history and on whether plaintiff had contacted Williams about the abandoned car. We conclude that this credibility determination was also against the manifest weight of the evidence and, as a result, disregard it. *Cook County Sheriff's Merit Board*,

2014 IL App (1st) 123308, ¶ 68. For example, we note that plaintiff's claimed disability was corroborated by all of the medical evidence. Even Stiehl—the one dissenting doctor—concluded that "[plaintiff] continues to have chronic pain in his left shoulder. *** He has shooting pain into his left hand. He has a current restriction with no lifting over 5 pounds using his left upper extremity." Stiehl also noted that "[t]he function of [plaintiff's] left shoulder and his left elbow are left with permanent deficits." Likewise, we note that the record in this case is almost 2000 pages and that plaintiff has a complex and lengthy medical history. To the extent that minor inconsistencies may exist, we note that these are on collateral issues and are essentially irrelevant to the underlying issue of whether plaintiff is disabled. Finally, the record clearly demonstrates that plaintiff contacted Williams regarding the abandoned vehicle—so there is no apparent contradiction in the testimony between plaintiff and Williams. Therefore, we conclude that the Board's credibility determination regarding plaintiff's testimony was against the manifest weight of the evidence.

¶ 49    As a last matter regarding the Board's finding that plaintiff's testimony was "less than credible," even if that finding were justified, the Board's ultimate conclusion would still be against the manifest weight of the evidence. That is because the areas of plaintiff's testimony the Board found problematic had minimal or no materiality regarding the question of whether plaintiff was disabled. The record is clear that the Board relied primarily upon Stiehl's conclusion, and for the reasons we have already provided, the Board erred in doing so.

¶ 50    After a comprehensive review of the record, it is clearly evident that plaintiff is disabled. *Hopkins*, 2016 IL App (5th) 160006, ¶ 37. We therefore conclude that the Board's finding is against the manifest weight of the evidence. *Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d at 211-12.

¶ 51                                   C. Act of Duty

¶ 52        Next, plaintiff argues that he was injured while performing an "act of duty" and is

therefore entitled to a line-of-duty pension. We agree.

¶ 53                                1. *The Applicable Law*

¶ 54        An officer is eligible for a line-of-duty pension, which pays 65% of the officer's

salary, when an officer is disabled as a result of an act of duty. 40 ILCS 5/3-114.1(a) (West

2016). An officer is eligible for a not-on-duty pension, which pays 50% of the officer's salary, if

the officer becomes disabled because of any cause other than the performance of an act of duty.

*Id.* § 3-114.2. An act of duty is defined as follows:

> "Any act of police duty inherently involving special risk, not ordinarily assumed
>
> by a citizen in the ordinary walks of life, imposed on a policeman by the statutes
>
> of this State or by the ordinances or police regulations of the city in which this Ar-
>
> ticle is in effect or by a special assignment; or any act of heroism performed in the
>
> city having for its direct purpose the saving of the life or property of a person oth-
>
> er than the policeman." *Id.* § 5-113.

¶ 55        Normally, whether an officer was injured in an "act of duty" is a mixed question

of law and fact. *Rose,* 2011 IL App (1st) 102157, ¶¶ 67-68. When an agency's decision presents

a mixed question of law and fact, the agency's decision will be reversed only if the decision was

clearly erroneous. *Stop the Mega-Dump v. County Board of De Kalb County*, 2012 IL App (2d)

110579, ¶ 25, 979 N.E.2d 524. A decision is clearly erroneous if, after a review of the entire rec-

ord, the reviewing court is left with the definite and firm conviction that a mistake has occurred.

*Moore v. Board of Education of the City of Chicago*, 2016 IL App (1st) 133148, ¶ 24, 56 N.E.3d

457. However, when the facts are not in dispute, whether an officer was injured performing an

"act of duty" is a question of law. *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 836-37, 882 N.E.2d 1268, 1270 (2008). When a matter is properly before the appellate court, it may exercise original jurisdiction when necessary for the complete determination of any case on review. Ill. Const. 1970, art. VI, § 6.

¶ 56        In *Mingus v. Board of Trustees of the Police Pension Fund of Peoria*, 2011 IL App (3d) 110098, ¶ 14, 961 N.E.2d 1285, an officer observed a vehicle skid off the road and slide into a ditch. The officer was injured when he attempted to push the car back onto the road. *Id.* ¶ 6. The Board determined that the officer was disabled, but concluded that his injury was not the result of an act of duty and therefore denied the officer a line-of-duty pension. *Id.* ¶¶ 3, 9. The Third District reversed, concluding as follows:

> "While it is true that ordinary citizens at times stop during the winter to help motorists that have become stuck and that tow-truck companies are also available to assist motorists in such a situation, those facts, while relevant, are not dispositive of the issue that was before the Board. See *Sarkis*, 378 Ill. App. 3d at 840-42. In addition, it appears from the record that the Board's focus at the hearing was misplaced. The Board lost sight of the fact [that] Mingus was required to stop and assist the motorist and instead focused on the alternatives available to Mingus to address the situation, after he stopped to assist. *** Rather, what is important for our determination here is that as a police officer, Mingus was required to stop and assist the stuck motorist. See *Johnson*, 114 Ill. 2d at 521-23. Everything that occurred after that point was merely a matter of Mingus exercising his discretion in how best to handle the situation. Thus, without question, Mingus was engaged in the performance of an act of duty at the time of the injury." *Id.* ¶ 15.

¶ 57                                    2. *This Case*

¶ 58            In this case, because the Board concluded that plaintiff was not disabled, it did not consider whether his claim arose from an "act of duty." However, as this court has already stated, the Board's disability finding was against the manifest weight of the evidence. Accordingly, in the interest of judicial efficiency, this court will turn to the issue of whether plaintiff's injuries arose from an act of duty. Ill. Const. 1970, art. VI, § 6.

¶ 59            First, whether plaintiff was injured in an "act of duty" in this case is a legal issue because the facts pertaining to this issue are not in dispute. *Sarkis*, 378 Ill. App. 3d at 836-37. Plaintiff testified that he was injured while pushing a car out of the snow while working as a patrol officer. This testimony was corroborated by Williams and the medical evidence. Even Stiehl concluded that plaintiff's injuries arose from falling down while pushing the car stuck in the snow. Accordingly, because the facts are not in dispute, whether plaintiff was injured while performing an "act of duty" is a question of law. *Id.*

¶ 60            Second, the law is clear that plaintiff was injured while performing an "act of duty." See *Mingus*, 2011 IL App (3d) 110098, ¶¶ 13-15 (officer was injured performing an "act of duty" while pushing a vehicle out of the snow). Williams testified that on the day of the accident, it was snowing heavily and many motorists were having trouble on the road. Williams noted that, although the police department does not encourage officers to push stuck vehicles, there is no rule against it. Plaintiff testified that, while working as a police officer, he assisted a stranded motorist push his car out of the snow. Plaintiff testified that this car was partially obstructing traffic and was blocking an entrance to an apartment complex. By pushing this vehicle out of the snow, plaintiff was performing his duty of keeping the roadway clear of obstructions and allow-

ing tenants to enter and exit their residences. By clearing the road of an obstruction, plaintiff may have avoided a traffic accident. Accordingly, plaintiff's actions qualify as "an act of duty" for which he is entitled to a line-of-duty pension. *Id.*; 40 ILCS 5/3-114.1(a) (West 2016).

¶ 61                                    III. CONCLUSION

¶ 62        For the reasons stated, we reverse the Board's determination that plaintiff was not disabled and conclude that plaintiff is entitled to a line-of-duty pension.

¶ 63        Reversed and remanded.