2024 IL App (1st) 240324-U

No. 1-24-0324

Order filed November 27, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LORI A. BECHINA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CH 1932 |
| | ) | |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | |
| CHICAGO, | ) | Honorable |
| | ) | Anna M. Loftus, |
| Defendant-Appellee. | | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*: We reverse the decision of the retirement board finding that plaintiff was not entitled to a duty disability benefit. We likewise reverse the order of the circuit court affirming that decision. We remand the cause to the retirement board with directions to enter an order granting plaintiff's application for a duty disability benefit.

¶ 2   Chicago police officer Lori A. Bechina appeals the order of the circuit court of Cook County affirming the decision of the Retirement Board of the Policemen's Annuity and Benefit

Fund of the City of Chicago (Board) to deny her claim for a duty disability benefit and to award her an ordinary disability benefit instead. Bechina argues the Board's decision was against the manifest weight of the evidence and she did not receive a fair hearing. For the following reasons, we reverse the Board's decision and the circuit court's order affirming that decision and remand the cause to the Board with directions to enter an order granting plaintiff's application for a duty disability benefit.[1]

¶ 3                                    I. BACKGROUND

¶ 4      Bechina has served as a Chicago Police Department (Department) officer since 1993. On May 11, 2016, while patrolling in an unmarked Department vehicle, she received a call of shots fired. On the way to the scene, she was involved in a collision with another vehicle. After the collision, she felt pain in her neck, back, and shoulders. She requested an ambulance and was examined, but not transported from the scene. Her supervisor generated an "injury on duty report" that indicated she sustained "a Cervical strain neck and back and a contusion to the left elbow."

¶ 5      The following day, Bechina saw a physician for "cervical strain/contusions/MVC [motor vehicle collision]" and was prescribed icepacks, ibuprofen, Tylenol #3, and no work for three days. Five days later, Bechina was reevaluated by another physician for "cervical strain, elbow and [left] side contusion." This physician provided more painkillers and a referral to orthopedics.

¶ 6      On May 20, 2016, Bechina saw Dr. Durudogan, an orthopedist, for "neck pain and left arm pain." In his report for this visit, Dr. Durudogan wrote, "The patient denies any other injury at the time of this occurrence." He also noted Bechina was a "Former Patient - New injury." Dr. Durudogan wrote Bechina a letter certifying she had been under his care—without specifying

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

when—for lower back pain, right rotator cuff tendonitis, lumbar disc degeneration, herniated cervical disc, lumbar spondylosis, carpal tunnel syndrome in the right wrist, cervical radiculopathy, and lumbar radiculopathy.[2] Dr. Durudogan's note said Bechina could return to work without restrictions on May 27, 2016.

¶ 7    Department records showed Bechina was on medical leave through June 6, 2016. At the hearing on her benefit application, Bechina testified she then reported back to the gang crimes investigation unit on "full and unrestricted duty" until, following her husband's suicide, she took two stress leaves from September 2018 to November 2018 and again from September 2019 to June 2020.

¶ 8    In October 2020, Bechina returned to Dr. Durudogan complaining of neck, wrist, and elbow pain. Dr. Durudogan diagnosed her with carpal tunnel and cubital tunnel syndromes and recommended surgery. In December 2020, she visited Dr. Todd Rimington, an orthopedic surgeon, who recommended the same surgery and, after ordering an MRI, diagnosed her with two herniated discs in her lumbar spine.

¶ 9    Bechina again went on medical leave beginning in January 2021. She sought treatment with several physicians and had five surgeries between February and December 2021, including a microdiscectomy in her lumbar spine. In April 2022, Bechina underwent a discectomy and fusion of vertebrae in her cervical spine and was awaiting approval for a fusion of vertebrae in her lumbar spine. Also in April 2022, after using all available leave, she filed an application with the Policemen's Annuity and Benefit Fund requesting a duty disability benefit, alleging her disability resulted from an on-duty incident.

_____

[2]At the hearing on her benefit application, Bechina testified that her right shoulder condition predated the collision.

¶ 10    After Bechina filed her application, the Board hired Dr. Bryan Neal, an orthopedic surgeon who specializes in hand surgery, to perform a medical examination of Bechina in June 2022. At the examination, Bechina reported to Dr. Neal that her neck, left shoulder, and lower back were injured in the 2016 collision. Dr. Neal noted that she returned to work for more than four years without any medical or work restrictions after the collision, until around October 2020. He spoke to Bechina about her symptoms and medical history, performed a medical examination, and reviewed her medical records, including Dr. Durudogan's May 20, 2016 letter.

¶ 11    Dr. Neal found that Bechina was not prevented from returning to work as a police officer by the condition of her neck, right shoulder, left shoulder, left long finger, carpal tunnel and cubital tunnel syndromes, Dupuytren's disease, or hypothyroidism. Regarding her lower back pain, he noted she had undergone several procedures on her lower back thus far, including injections, a microdiscectomy, and placement of an electrical spine stimulator. He refrained from making a prognosis about her ability to return to work pending her planned lumbar spine fusion surgery. He opined that Bechina was "able to work light duty and that she does have the physical ability to safely carry, handle, and use a firearm." He reported, however, that Bechina "does not have the ability to work full-duty work," in that she was not able to safely arrest someone actively resisting. Dr. Neal "[did] not find any of the current diagnoses *** to be related to her motor vehicle accident."

¶ 12    Bechina sent Dr. Neal's report to her three treating physicians, who each provided a narrative report describing his treatment of Bechina and his medical opinion on her conditions.

¶ 13    Dr. Rimington, an orthopedic surgeon specializing in hand and upper extremity surgery, first saw Bechina in December 2020. He listed her diagnoses, including cervical radiculopathy and lumbar radiculopathy, and opined, "All the listed diagnoses are related to the May [11], 2016, work

related motor vehicle accident." He further wrote, "To my knowledge, Lori Bechina did not have any pre-existing conditions relevant to the diagnoses." Dr. Rimington disagreed with Dr. Neal's assessment that Bechina's injuries were not caused by the 2016 collision, but he did not comment on the four-year gap in her treatment. He found Bechina unable to return to work at present, even in a light duty capacity.

¶ 14    Dr. Adam Young, a physician specializing in pain medicine, first saw Bechina in February 2021 for back pain, on referral from Dr. Rimington. Dr. Young opined that Bechina was unable to return to work as a police officer, even on light duty, and that her symptoms were "a direct result of her injury sustained in 2016." He said he "d[id] not find a reason that her symptoms stem from any other cause than the accident in 2016" and "to my knowledge she did not have any pre-existing conditions which would have led to her lower back, leg pain." Dr. Young criticized Dr. Neal as having a "limited understanding of spine pathology and pain related to the lumbar spine," for asking about Bechina's symptoms over the previous week rather than a longer period, and for asking Bechina overly broad questions about her symptoms. Dr. Young did not comment on the four-year gap in Bechina's treatment.

¶ 15    Dr. Gary Shapiro, an orthopedic surgeon, initially saw Bechina in April 2021, on referral from Dr. Young. Dr. Shapiro performed Bechina's back surgeries and implanted her electrical spinal cord stimulator. He wrote, "She has a history of work-related injury. *** She was working undercover in 2016 when she was involved in a motor vehicle accident that was work-related." He said that even after treatment, Bechina "continued to have chronic intolerable low back pain and left lower extremity radiculopathy." Dr. Shapiro was planning to perform Bechina's lumbar spine fusion surgery. He did not comment on the cause of Bechina's current conditions, the four-year gap in her treatment, or her present ability to return to work.

¶ 16    The Board held a hearing on Bechina's benefit application in January 2023. Only Bechina testified. Regarding the 2016 collision, she said, "Most of the impact was on the left side, so my head, my neck, my shoulder, my legs. Everything hit the door and I was discombobulated." Although she returned to full-duty work in June 2016, she continued to experience pain in her neck, head, shoulders, and spine as well as difficulty sleeping and exercising. She "just dealt with the pain" and was allowed to do "internal police work" until she was transferred "into an inside position" because of her pain. She returned to work instead of remaining on medical leave because she had two children in college and her abusive husband insisted on her return. If she did not go back, she "was going to be killed." She had not attempted to qualify to handle a weapon since approximately 2018. She did not sustain any new injuries after the 2016 collision, and her 2021 leave was due entirely to her injuries sustained in that collision. In September 2022, she underwent the lumbar fusion surgery previously referenced; she then had a revision of that surgery in January 2023, just three days before the hearing.

¶ 17    At the hearing, a board trustee had the following exchange with Bechina:

"Q. And with twenty-nine years and a day on the job and you're over the age of fifty, you are entitled to a full retirement benefit; is that correct?

A. Not full benefits. I think you have to be fifty-five years of age.

Q. 75 percent—I'm sorry.

A. I believe you have to be fifty-five years of age to collect your benefits. I have twenty-nine years on my job, of course, but I'm not fifty-five years old. So, yeah, I would like to come back to work and get to my retirement, yes, absolutely.

Q. So you could retire today with 75 percent retirement benefits; is that correct?

A. I could retire and I'd have to pay for insurance and all of that.

Q. Okay. So that's what's motivating it then."

¶ 18 Bechina's counsel objected, and the board trustee stated, "I'll strike it." When the hearing officer offered to rule on the objection, Bechina's counsel stated, "So I think that we've concluded that the record will reflect that the question has been stricken." The hearing proceeded.

¶ 19 After meeting in closed session, the Board voted to award Bechina an ordinary disability benefit "based off of her recent surgery," but denied the duty disability benefit. The ordinary disability benefit provides for 50% of Bechina's salary (40 ILCS 5/5-155 (West 2022)), whereas a duty disability benefit would provide 75% of her salary (40 ILCS 5/5-154 (West 2022)).

¶ 20 In February 2023, the Board issued its written decision and order, explaining that it had reviewed Dr. Neal's report as well as the responses of Bechina's three treating physicians. It found Bechina was disabled from full and unrestricted police duties due to her lumbar spine condition, but the disability was not the result of an act of duty. The Board explained that it gave more weight to the opinion of Dr. Neal, who concluded that Bechina's lumbar spine condition, while disabling, was unrelated to the 2016 collision. The Board found significant the four-plus year gap between Bechina's 2016 injuries and her treatment beginning in 2020. Dr. Neal acknowledged the gap in treatment in his report, whereas none of Bechina's treating physicians addressed it.

¶ 21 Bechina filed a petition for administrative review in the circuit court. The court held a hearing in January 2024 and denied her petition. Bechina timely appealed.

¶ 22                                                    II. ANALYSIS

¶ 23 Bechina's primary challenge is to the Board's denial of the duty disability benefit. The parties agree that Bechina is disabled due to her lumbar spine condition, and that the 2016 collision occurred during an act of duty. The only remaining question is whether the record supports the Board's determination that Bechina's present disability did not result from the 2016 collision. This

is a question of fact. See *Swanson v. Board of Trustees of Flossmoor Police Pension Fund*, 2014 IL App (1st) 130561, ¶ 30.

¶ 24    We review the decision of the administrative agency—here, the Board—not that of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The plaintiff bears the burden of proof. *Swanson*, 2014 IL App (1st) 130561, ¶ 30. We will not disturb the Board's determination on a question of fact unless it is against the manifest weight of the evidence. *Id.* An agency's finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, and not based upon any evidence. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004).

¶ 25    We must take the factual findings and conclusions of the agency to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2022). It is not our function to reweigh the evidence or to make independent determinations of fact. *Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 463 (2009). We affirm if the record contains evidence to support the Board's decision, and we defer to the Board's resolution of conflicts in the evidence. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540 (2006). However, an agency's factual determination "is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight." *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211-12 (2006). Further, although factual findings "are held to be *prima facie* true, a reviewing court may evaluate documentary evidence *de novo*." *Wilfert v. Retirement Board of Firemen's Annuity and Benefit Fund of Chicago*, 318 Ill. App. 3d 507, 514 (2000). When the record does not show evidentiary support for the agency's determination, a reviewing court will not hesitate to grant relief. *Id.* at 212. Moreover, the provisions governing police pensions should be liberally construed in favor of the applicant. See

*Salcedo v. Retirement Board of Policemen's Annuity and Benefit Fund of City of Chicago*, 2023 IL App (1st) 220728, ¶ 58.

¶ 26    After reviewing the record, we find the Board's determination that Bechina did not prove her disability resulted from an act of duty was against the manifest weight of the evidence. Bechina testified that the 2016 collision caused her disabling lower back pain, and she submitted the medical opinions of Dr. Young and Dr. Rimington, who both agreed that the collision caused her present lumbar spine condition.

¶ 27    In denying her application for a duty disability benefit, the Board relied heavily on the opinion of Dr. Neal, who "[did] not find any of the current diagnoses *** to be related to her motor vehicle accident." Dr. Neal did not, however, explain the basis for this conclusion or propose any alternative reason for Bechina's lumbar spine condition. The Board concedes that Bechina is disabled and cannot work as a police officer. Nonetheless, the Board ignores the fact that Bechina has been involved in only one traumatic accident in which the relevant portions of her body were injured. Instead, the Board relies upon Dr. Neal's bare assertion to support its finding that the cause of Bechina's long history of medical treatment and numerous surgical procedures is not the 2016 on-duty vehicular accident. The Board's decision, rejecting Bechina's unimpeached testimony and the reports of three treating physicians as it did, was against the manifest weight of the evidence. See *Wade*, 226 Ill. 2d at 507 (reversing denial of duty disability benefit where pension board gave greater weight to opinion of doctor who provided no factual basis for his conclusion that injuries were preexisting); see also *Hopkins v. Board of Trustees of Firefighters Pension Fund of the City of East St. Louis*, 2016 IL App (5th) 160006, ¶¶ 49-50 (reversing denial of duty disability benefit where all medical evidence except the opinion of one doctor supported finding that firefighter was disabled in the line of duty).

¶ 28     The Board notes that "[p]laintiff's own treating physicians never excluded by analysis or explanation idiopathic causes; they merely took plaintiff's word that her accident from 4 ½ years ago was the cause of her current condition." Yet neither Dr. Neal nor anyone else proposed that Bechina's lower back condition was idiopathic in nature. No one suggested the disc in her lower back herniated spontaneously or gradually over time, for instance, or even that it could have. To the extent the Board assumed as much, it had no evidentiary basis to do so. Notably, Dr. Young and Dr. Rimington reviewed Dr. Neal's report, which described Bechina's history of back pain, and nonetheless concluded that the 2016 collision caused her disabling lower back pain.

¶ 29     The Board also placed considerable weight on the fact that Bechina returned to work without restrictions from June 2016 until January 2021 and that Dr. Neal acknowledged this fact in his report, whereas none of her treating physicians mentioned it. However, Dr. Neal noted Bechina's return to work on page three of his report, and he concluded that Bechina's conditions were unrelated to the 2016 collision on page 30. He nowhere stated that he reached this conclusion *because* she returned to work. Dr. Rimington and Dr. Young were presumably aware of Bechina's work history, as they both stated they reviewed Dr. Neal's report and disagreed with his assessment. Furthermore, those 4½ years were not without interruption. Bechina took stress leaves that totaled approximately a year. She further testified that she did informal "internal police work" in an "inside position" after June 2016 because she could not manage her pain, and that she had not qualified to carry her weapon since approximately 2018. Bechina's return to work alone is insufficient evidence to conclude that her injuries from the 2016 collision were thoroughly resolved by June 2016.

¶ 30     We emphasize that while there were conflicting medical opinions, there was no conflicting evidence on the actual cause of Bechina's disability—no intervening injury, medical condition, or

even proposed attribution to normal aging. The Board was not required to defer to the opinions of Bechina's treating physicians over Dr. Neal's merely because they outnumbered him. See *Kramarski v. Board of Trustees of the Village of Orland Park Police Pension Fund*, 402 Ill. App. 3d 1040, 1049 (2010) (upholding denial of disability benefit based on a single physician's opinion where, of three reports, his report was "the most thorough and thoughtful" and the board found plaintiff's testimony not credible). However, absent any other explanation, the opposite conclusion—that Bechina's lumbar spine injury in 2016 caused her disabling lower back pain in 2021—is clearly evident to any reasonable finder of fact. See *Kouzoukas*, 234 Ill. 2d at 472-73 (reversing denial of duty disability benefit where one physician proposed alternative causes, but all other evidence and testimony linked applicant's pain to an on-duty injury); see also *Bowlin*, 368 Ill. App. 3d at 212 (reversing denial of disability where the record did not support board's reliance on the opinion of one doctor over the opinions of five other doctors).

¶ 31    Because we reverse on other grounds, we need not consider Bechina's secondary argument that she did not receive a fair hearing.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated above, we reverse the Board's decision and the circuit court's order affirming that decision. We remand to the Board with directions to grant Bechina's application for a duty disability pension benefit.

¶ 34    Reversed and remanded with directions.