2026 IL App (1st) 242387-U

No. 1-24-2387

First Division
March 31, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALFRED J. CARUSO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 23 CH 08131 |
| THE RETIREMENT BOARD OF THE | ) | |
| POLICEMEN'S ANNUITY AND BENEFIT | ) | Honorable |
| FUND OF THE CITY OF CHICAGO, | ) | Caroline Kate Moreland |
| | ) | Judge, Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The police retirement board's decision denying plaintiff's application for duty disability benefits is affirmed, where the evidence supports the Board's finding that plaintiff's back injury was not caused by a duty related incident.

¶ 2    Plaintiff Alfred J. Caruso, a Chicago police officer, appeals the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board) denying his application for reclassification of "ordinary disability benefits" that he received from

September 16, 2021, to July 24, 2023, under the Illinois Pension Code (Code) (40 ILCS 5/5-154(a) (West 2022)) to "duty disability benefits" for that same period. As ordinary disability, plaintiff was awarded 50% of his salary. As duty disability, plaintiff would have been awarded 75% of his salary. Plaintiff contends that the Board erred in concluding that his lower back injuries were not the result of his May 23, 2013, injury which occurred during an act of duty, entitling him to duty disability. We find that the Board's decision was not against the manifest weight of the evidence, and therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Plaintiff's Application for Duty Disability Benefits

¶ 5      Plaintiff has been employed as a police officer with the Chicago Police Department (CPD) since June 26, 2006. On March 3, 2022, plaintiff applied to the Board for duty disability benefits pursuant to article 5 of the Code. In a sworn affidavit submitted with his application, plaintiff averred that on May 23, 2013, he sustained injuries to his left ankle and lower back while responding to a reported gang disturbance. Plaintiff stated that after detaining a suspect who attempted to flee, he returned to his police vehicle and "while walking" he "stepped on a large piece of broken concrete," causing him to twist and injure his ankle and back. Plaintiff additionally averred that while at the hospital he was diagnosed with back injuries and a broken ankle. Plaintiff asserted that he required multiple lower back surgeries that resulted in his disability. However, the affidavit does not list any other on duty incidents as a cause of plaintiff's back disability.

¶ 6                                    B. Exhibits

¶ 7      The administrative record contains numerous exhibits submitted by both plaintiff and the Board, including CPD records, medical records, physician reports, and plaintiff's disability application.

¶ 8                                   1. Medical and Employment Records

¶ 9     Medical records from Northwestern Memorial Hospital reflect that plaintiff was treated in the emergency department on May 23, 2013. The discharge instructions listed an "ankle sprain" as the diagnosis and did not reference complaints of back pain.

¶ 10     Similarly, a CPD injury report dated May 23, 2013, states: during the course of a "street investigation," "[plaintiff], while in the "guard position" was headed back to the vehicle at which time he stepped on a large rock, twisting his ankle sideways. The report does not refer to a back injury.

¶ 11     Police Officer Arletta Kubik was on duty with plaintiff on the date of the incident. In a written supplemental report, Kubik stated that she observed plaintiff "step on a large rock, twisting his left ankle sideways." She transported plaintiff to Northwestern Hospital, where he was diagnosed and treated for an ankle sprain and then released.

¶ 12     On June 3, 2013, plaintiff began treatment with orthopedic specialist Dr. Stephen Perns. Dr. Perns diagnosed plaintiff with an ankle sprain and an avulsion-type fracture involving the medial malleolus of the left ankle. Significantly, Dr. Perns' report states that plaintiff stated to him that "while working and jumping over a fence on 5/3/2013, he landed on a rock and twisted his ankle." Dr. Perns noted that plaintiff denied "any further complaints." Follow-up visits in June, July, and August 2013 focused on plaintiff's ankle injury and did not indicate complaints of lower back pain.

¶ 13     In late August 2013, plaintiff first started experiencing chest and lower back pain and went to see Dr. Linsey Erickeson at Advocate Christ Medical Center. Medical records from an August 27, 2013, evaluation by Dr. Erickson noted that plaintiff had been experiencing back pain for three days leading up to the visit and concluded that it likely resulted from sciatica.

¶ 14    On September 16, 2013, plaintiff was evaluated by Dr. Robert Strugala, a spinal surgeon, for complaints of lower back pain and left leg pain. Dr. Strugala reported that plaintiff stated his symptoms had begun approximately three to four weeks earlier. Dr. Strugala attributed the onset of the back and leg symptoms to an altered gait and the physical therapy exercises plaintiff had been doing, but made no association of plaintiff's symptoms with a specific traumatic event. An MRI performed on October 3, 2013, by Dr. Strugala revealed a disc herniation at the L5-S1 level. Plaintiff subsequently underwent lumbar spine surgery on March 20, 2014, consisting of a left-sided L5-S1 hemilaminotomy with microdiscectomy. Following the surgery, plaintiff returned to duty with the CPD.

¶ 15    On February 8, 2015, plaintiff was involved in an on-duty motor vehicle accident while responding to a call with lights and sirens activated. CPD records indicate that plaintiff sustained a lower back strain as a result of the crash. Plaintiff did not take time off from work but received treatment, including an epidural injection.

¶ 16    In December 2017, plaintiff was involved in another on-duty accident while riding in the rear seat of a police vehicle during a pursuit. Plaintiff reported that the vehicle struck a pothole or bump, which aggravated his back in the same location as his prior injury. Plaintiff continued working but received a second epidural injection.

¶ 17    On February 4, 2020, plaintiff was involved in an off-duty motor vehicle accident while driving home from work when another driver T-boned him after running a red light. Plaintiff again injured his lower back.

¶ 18    Plaintiff underwent a second lumbar surgery on March 5, 2020, consisting of another L5-S1 hemilaminotomy with microdiscectomy. After recovering from surgery, plaintiff returned to full-duty work.

¶ 19    Medical records referenced an additional work-related injury on January 20, 2021, when plaintiff reportedly felt a sharp pain and a "crack" in his lumbar spine while attending a training class.

¶ 20    On July 6, 2021, plaintiff underwent a third lumbar surgery consisting of an L5-S1 fusion with instrumentation, including pedicle screw-and-rod fixation and placement of an interbody cage. Plaintiff thereafter underwent physical therapy.

¶ 21                                  2. Independent Medical Examination

¶ 22    The Board obtained an independent medical examination from orthopedic surgeon Dr. Jay Levin. Dr. Levin examined plaintiff on May 16, 2022, and prepared a comprehensive written report, detailing plaintiff's medical history and treatment providers' summaries from the time of the May 2013 incident. Dr. Levin explained that the immediate post-injury medical record did not support that plaintiff sustained a back injury from the events in 2013. Dr. Levin noted that the first record documenting lumbar spine complaints were from August 27, 2013, when plaintiff was seen by Dr. Linsey Erickson, who noted chest and back pain. Dr. Levin further noted that when Dr. Sturgala saw plaintiff on September 16, 2013, for an evaluation regarding his back pain and left leg symptoms, plaintiff stated the onset of back pain was about 3-4 weeks ago with no trauma or particular event being noted. Dr. Levin stated this supported a finding that plaintiff did not sustain an acute injury to his spine from the May 2013 incident, and the subsequent need for the March 20, 2014, surgical intervention was therefore unrelated. Dr. Levin also documented that subsequent to the May 23, 2013, occurrence, plaintiff sustained multiple injuries to his lumbar spine, both work and non-work-related, and had subsequently undergone three procedures as noted above, and was, therefore, currently unable to return to a CPD-assigned position.

¶ 23                                  3. Medical Examiners

¶ 24                             Dr. Wesley Y. Yapor, M.D.

¶ 25     Dr. Yapor, a neurosurgeon, saw plaintiff in February 2014, and related plaintiff's symptoms to the 2013 incident. Dr. Yapor's assessment concluded that plaintiff had an L5-S1 herniated disc compressing the left S2 foot.

¶ 26                             Dr. Frank Phillips, M.D.

¶ 27     Dr. Phillips, the director of spine surgery at Rush University Medical Center, diagnosed plaintiff with lumbar disc herniation and sciatica. Dr. Phillips noted that plaintiff was experiencing radicular symptoms consistent with nerve irritation originating in the lumbar spine, including pain radiating down the leg and related plaintiff's disabling condition to the L5-S1 disk. Dr. Philips performed the three spinal surgeries on plaintiff.

¶ 28                             Dr. Lynsey Stewart, M.D.

¶ 29     Dr. Stewart, the medical director for U.S. HealthWorks Medical Group, saw plaintiff on June 18, 2014. for a "mandatory physical examination." Dr. Stewart's report reflects that the plaintiff had "no complaints today and his examination was unremarkable." The report notes that plaintiff had an "on duty injury in May 2013 which resulted in an L5/S1 discectomy."

¶ 30                             Dr. Gary S. Shapiro, M.D.

¶ 31     Dr. Shapiro, an orthopedic surgeon, saw plaintiff numerous times, beginning in July 2019. He noted that plaintiff initially injured his back in 2013 while working as a police officer and underwent a left L5-S1 microdiscectomy in March 2014. Dr. Shapiro further opined that plaintiff later re-aggravated his back during a subsequent work-related incident, resulting in renewed back and left leg pain, and concluded that plaintiff's ongoing condition and treatment were causally related to the original 2013 injury and subsequent surgery.

¶ 32                              Dr. Mehul Garal, M.D.

¶ 33    Dr. Garal specializes in physical medicine and rehabilitation and assessed plaintiff's back in September 2022, finding "the assessment are normal, except for limited range of motion of the lumbar spine." He noted that, based on plaintiff's statements and injuries, plaintiff injured his back from the 2013 injury, which required an LS-S1 microdiscectomy in March 2014 due to the pain in his lower spine.

¶ 34                            C. Hearing Before the Board

¶ 35    On July 27, 2023, the Board conducted an evidentiary hearing on plaintiff's application for disability benefits. Plaintiff appeared with counsel and testified regarding the circumstances of his injuries, his medical history, and the progression of his back condition. Dr. Susan Buchanan, the Board's appointed physician, also appeared and was the only medical practitioner to testify. The Board admitted Exhibits 1 through 5, which included plaintiff's application for duty disability benefits, an inter-office communication from CPD's Medical Services Section, along with a personnel action request form, a report of medical roll use prepared by the Medical Services Section, Dr. Levin's report, medical examiners' reports, and a CPD injury on duty report. Plaintiff separately introduced his own exhibits, consisting largely of medical records and which were also admitted into evidence.

¶ 36    In his opening statement, plaintiff's counsel explained that plaintiff had already returned to full duty with CPD and was therefore not seeking ongoing disability benefits. Instead, plaintiff sought to reclassify the ordinary disability benefits he received from September 16, 2021, to July 24, 2023, as duty disability benefits, which would entitle him to 75% of his salary for that period instead of 50%.

¶ 37    Plaintiff testified that on May 23, 2013, he and his partner responded to a gang disturbance call involving a vehicle obstructing traffic. He stated that after the suspects' vehicle was stopped, one of the occupants fled. Plaintiff pursued the suspect on foot, which required him to jump a fence during the chase. Plaintiff jumped the fence again on the way back and "landed in some concrete that was busted up in the alley and snapped [his] ankle and injured [his] back." Plaintiff contended that at the time he was hopping over the fence, he was continuing his investigation to conduct a name check and license plate on the LEADS system. Plaintiff stated he was then transported to Northwestern Memorial Hospital, where he was treated for an ankle injury and placed in a cast on his left ankle.

¶ 38    Plaintiff testified that he later experienced numbness and burning pain radiating down his leg and that subsequent evaluation revealed a lumbar disc herniation. Plaintiff stated that he underwent lumbar surgery on March 20, 2014, and that afterward he returned to duty. Plaintiff further testified that he sustained additional injuries affecting his back in later incidents while on duty, in 2015 and in 2017.

¶ 39    Plaintiff also testified that he underwent a second lumbar surgery on March 5, 2020, and a third surgery in July 2021, consisting of a lumbar fusion and a bone graft. Plaintiff remained off work following the 2021 surgery until he was cleared to return to duty in June 2023.

¶ 40    Plaintiff further asserted that several treating physicians, including Drs. Yapor, Perns, Strugala, Shapiro, Stewart, Garala, and Phillips, concluded that plaintiff's injuries stemmed from the 2013 on-duty injury.

¶ 41    Plaintiff testified that Dr. Levin's opinion that plaintiff's lumbar condition was not caused by the May 2013 incident was incorrect and inconsistent because plaintiff initially could not articulate what his symptoms were, even though he knew that they were related to his ankle injury

and immobilization in the cast. Plaintiff explained that he did not start to experience back pain until later because of the numbness caused by his cast and the painkillers he was prescribed. Plaintiff stated that he "always thought it was the cast," or that it was just a severe ankle break, and it wasn't diagnosed properly until he got the cast off and started doing physical therapy. He explained that during his initial recovery, he attributed the discomfort to the cast rather than his spine, and noted that had he known then what he does now, the initial reports "would be a lot different."

¶ 42    During questioning by the Board, plaintiff was asked about discrepancies between his hearing testimony and the affidavit he submitted with his disability application. The Board specifically questioned plaintiff as to why, in his affidavit, plaintiff stated that he injured his ankle and back when he stepped on debris while returning to his police vehicle, but at the hearing, he testified that he injured himself when he jumped over a fence and landed on broken concrete. Plaintiff responded that it was an "oversight." The Board also questioned plaintiff as to why he disagreed with Dr. Levin's report and did not list back pain in his initial doctor's visit with Dr. Perns. Plaintiff explained that during this time, he and Dr. Perns always thought that his pain came from the cast or a severe ankle break, and it was not diagnosed properly until he got the cast off and started doing physical therapy. Plaintiff admitted that when he complained to the ER staff, he told them "everything was in the foot."

¶ 43    Upon further questioning by the Board, plaintiff addressed several discrepancies in the record. He acknowledged that the on-duty injury report submitted with his disability application stated he was walking back to his vehicle and did not mention jumping a fence, which differed from his hearing testimony that the injury occurred while he was jumping a fence to investigate a

disturbance. Plaintiff stated that he did not recall completing the report, but admitted that he signed it.

¶ 44　Second, the Board questioned plaintiff regarding his affidavit statement that "while at the hospital, I was diagnosed with back injuries," and asked him to identify where that diagnosis appeared in the hospital records. Plaintiff clarified that he was not referring to the initial hospital visit, but rather to a later point after his cast was removed and he began physical therapy, at which time he claimed medical providers recognized the injury involved his spine and not just his ankle.

¶ 45　Dr. Susan Buchanan testified regarding the medical concept of lumbar radiculopathy. She explained that lumbar radiculopathy, commonly referred to as sciatica, involves pain originating along the sciatic nerve, which runs from the lower back through the buttock and down the back of the thigh and leg. Dr. Buchanan testified that symptoms such as pain in the back of the leg or foot may also be consistent with radiculopathy even where a patient does not experience classic shooting pain through the buttock, and she acknowledged that radiculopathy was among plaintiff's diagnoses. When questioned about the potential cause of such symptoms, Dr. Buchanan agreed that lumbar radiculopathy could result from a fall involving twisting of the body, such as the incident plaintiff described in 2013 when he fell and injured his ankle.

¶ 46　After considering the testimony and documentary evidence, the Board denied plaintiff's request for duty disability benefits. In its decision, the Board noted that in his affidavit, setting forth the basis of his claim, plaintiff listed only the May 2013 incident. Further, although plaintiff referred to three surgeries, he made no reference to any duty injuries. He failed to list either the February 8, 2015, or the December 2017 on-duty motor vehicle accidents, or the January 2021 training injury, as bases for his disability claim. The Board found that the weight of the medical evidence did not establish a causal connection between the May 23, 2013, incident and plaintiff's

lumbar condition. In reaching its decision, the Board relied in part on the absence of contemporaneous documentation of a back injury, the inconsistencies between plaintiff's affidavit and his hearing testimony regarding how the injury occurred, and the opinion of Dr. Levin that the 2013 event did not cause plaintiff's lumbar condition. The Board awarded plaintiff ordinary disability benefits for the period from September 16, 2021, through July 24, 2023, and terminated those benefits upon his reinstatement to full duty on July 25, 2023.

¶ 47                                  D. Administrative Review in the Circuit Court

¶ 48    On September 13, 2023, plaintiff filed a petition for administrative review in the circuit court, alleging that the Board's decision was clearly erroneous, against the manifest weight of the evidence, and contrary to law. On November 20, 2024, the circuit court entered an order affirming the Board's decision.

¶ 49    This appeal followed.

¶ 50                                          II. ANALYSIS

¶ 51    On appeal, plaintiff argues that he was performing an act of duty at the time of his injury and that he successfully met his burden of proving disability. He contends that the Board's decision was against the manifest weight of the evidence because it improperly rejected his testimony, as well as the opinions of his treating physicians and the Board's own appointed physician, in favor of Dr. Levin's. Finally, plaintiff asserts that the Board's reliance on the report of a non-testifying, paid expert, Dr. Levin, violates the Code and is fundamentally unfair. In response, the Board maintains that its finding that plaintiff was not disabled as a result of an act of duty is supported by competent evidence in the record, and that the opinion of a single physician is sufficient to affirm this conclusion.

¶ 52 Plaintiff seeks duty disability benefits under section 5-154(a) of the Code (40 ILCS 5/5-154(a) (West 2022)). Section 5-154 provides that:

"Active policeman who becomes disabled on or after the effective date as the result of injury incurred on or after such date in the performance of an act of duty, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary, equal to 75% of his salary, as salary is defined in this Article, at the time the disability is allowed; or in the case of a policeman on duty disability who returns to active employment at any time for a period of at least 2 years and is again disabled from the same cause or causes, 75% of his salary, as salary is defined in this Article, at the time disability is allowed." *Id.*

¶ 53 This court has interpreted the phrase "incurred in or resulting from an act or acts of duty" to include circumstances in which a plaintiff's injury "was a cause of his disability and that he aggravated a preexisting injury as the result of an act or acts of duty." *Howe v. Retirement Board of Firemen's Annuity and Benefit Fund of Chicago*, 2015 IL App (1st) 141350, ¶ 55.

¶ 54 In administrative review proceedings, we review the decision of the administrative agency rather than the circuit court, and our review encompasses all factual and legal issues presented in the record. *Shirley v. Village of Clarendon Hills Police Pension Fund*, 2024 IL App (3d) 230257, ¶ 17. The applicable standard of review and the level of deference afforded to the administrative agency's decision depend on whether the issue presented involves a question of fact, a question of law, or a mixed question of law and fact. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). Plaintiff argues for the application of a clearly erroneous standard of review, while the Board argues that the manifest weight of the evidence standard is proper. Plaintiff

contends that the Board's interpretation of what constitutes an "act of duty" under the Illinois Pension Code presents a question of law.

¶ 55    It is true that mixed questions of fact and law are subject to the clearly erroneous standard, and an administrative agency's interpretation of "act of duty" is treated as a question of law. *Gilliam v. Board of Trustees of City of Pontiac Police Pension Fund*, 2018 IL App (4th) 170232, ¶¶ 20, 24. In the instant case, however, the disposition does not depend on an interpretation of "act of duty." There is no dispute that plaintiff's May 23, 2013, injury occurred during an act of duty. The dispositive issue here is whether a medical nexus exists between the May 2013 incident and plaintiff's subsequent back injury, a purely factual determination, which we review under the manifest weight of the evidence standard. See *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 22 (where the sole issue is "whether a work-related incident is a cause of a claimant's disability, this is a purely factual determination," subject to review under the manifest weight of the evidence standard); *Kouzoukas v. Retirement Board of Policemen's Annuity and Benefit Fund of City of Chicago*, 234 Ill. 2d 446, 472 (2009) (causation is an issue of fact for the Board's consideration.); see also *Marconi*, 225 Ill. 2d at 534.

¶ 56    Under the manifest weight standard, we will overturn the administrative decision "only if the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *Shirley*, 2024 IL App (3d) 230257, ¶ 20. We may not reweigh the evidence or overturn the agency's findings simply because a contrary conclusion could also be drawn. *Id*. " '[F]indings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct***.' " *Id*. (quoting 735 ILCS 5/3-110 (West 2018). "So long as the record contains evidence supporting the administrative agency's decision, the decision should be affirmed." *Id*.

¶ 57    At an administrative hearing, the burden of proof rests with the plaintiff. *Marconi*, 225 Ill. 2d at 532-33. To establish causation, the plaintiff must demonstrate a sufficient causal connection between the injury and the act of duty. *McCumber v. Board of Trustees of Oswego Fire Protection District Firefighters' Pension Fund*, 2019 IL App (2d) 180316, ¶ 52. The act of duty is not required to be the sole or principal cause of the disability. *Id*. ¶ 53; see also *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007) (in order to obtain a full line-of-duty-related pension, a claimant need not prove that a duty-related accident is the sole cause, or even the primary cause, of his disability). "A disability can have multiple causes." *McCumber*, 2019 IL App (2d) 180316, ¶ 52. A claimant must only prove that the duty-related accident "is a causative factor contributing to the claimant's disability." *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002).

¶ 58    Plaintiff asserts that the "issue here is whether [his] injury was sustained as the result of "an act of duty and whether, as a result, he should have been awarded duty disability benefits." He invites our attention to *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986), *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, and *Martin v. Board of Trustees of the Police Pension Fund of Shiloh*, 2017 IL App (5th) 160344. These cases, he contends, demonstrate that the capacity in which he was working involved risks not ordinarily assumed by members of the general public and therefore satisfies the Code's "special risk" requirement. Accordingly, plaintiff asserts the Board's determination that his injury did not arise from an act of duty is against the manifest weight of the evidence.

¶ 59    The relevant inquiry in *Johnson* was whether the term "special risk" as stated in the "act of duty" statute encompassed only inherently dangerous activities. Our supreme court answered the

inquiry in the negative. Briefly, in *Johnson*, the plaintiff, while performing traffic-control duties, responded to a citizen's request for assistance regarding a traffic accident. *Johnson*, 225 Ill. 2d at 520. While crossing the street in response, he slipped on wet pavement, fell, and was injured. *Id.* Following an administrative hearing, the defendant Board denied plaintiff's duty disability application. *Id.* In so doing, the defendant reasoned that the plaintiff's injury was not the result of a "special risk" and therefore was not considered to have occurred in the course of an "act of duty" as defined in the Illinois Pension Code. *Id*. In rejecting the defendant's interpretation of "an act of duty," the supreme court held that the statute could not be read as requiring duty disability for only inherently dangerous activities. *Id* at 521. The court reasoned that, because the officer was required to respond and had to keep his "attention and energies directed towards being prepared to deal with any eventuality," he was engaged in an act involving a special risk not assumed by ordinary citizens. *Id.* at 522. The court noted that police officers assigned to duties that involve protection of the public often discharge those duties by performing acts which are similar to those involved in many civilian occupations. In determining whether an officer's injury occurred while in the act of duty, "[t]he crux is the capacity in which the police officer is acting." *Id.*

¶ 60     Following on the heels of *Johnson*, this court, in *Rose*, was tasked with determining whether the plaintiff was entitled to disability duty benefits. In sum, while on patrol and driving his squad car, the plaintiff was injured in an automobile accident. *Rose*, 2011 IL App (1st) 102157, ¶ 1. Subsequently, the plaintiff was involved in a separate off-duty automobile accident. As a result of the first automobile accident, plaintiff filed an application with the pension board seeking a "line-of-duty" pension. *Id*. ¶ 2. The pension board denied the plaintiff's benefits application, reasoning that he was not entitled to a line of duty disability pension because, *inter alia*, the accident did not involve an act that inherently required special risks not ordinarily assumed by

regular citizens and therefore, the plaintiff's injury did not occur while he was performing an "act of duty," *Id*. ¶ 60. Citing our supreme court's reasoning in *Johnson*, the court in *Rose* held that at the time of the plaintiff's accident, he was acting in the capacity of a patrol officer, which required him to undertake special risks not faced by ordinary citizens, and that he was therefore entitled to a full "line-of-duty" disability pension. *Id*. ¶ 86. Similarly, in *Martin*, the court concluded that a detective injured while returning from courthouse duties was performing an act of duty because he was engaged in functions unique to police work and was required to maintain vigilance for any other police responsibility. *Martin*, 2017 IL App (5th) 160344, ¶¶ 28, 38.

¶ 61    We agree with plaintiff that *Johnson, Rose* and *Martin* support a finding that the activity in which plaintiff was involved at the time of the May 2013 incident falls within the statutory definition of "act of duty." Here, however, the Board does not dispute that the May 2013 incident occurred during an act of duty. Contrary to plaintiff's assertion, the issue here is whether the May 2013 incident caused the specific lower back condition for which plaintiff sought benefits. Thus, plaintiff's reliance on *Johnson, Rose* and *Martin* for the particular reason he cites is misplaced.

¶ 62    Plaintiff attempts to further his argument on appeal by raising two additional points, neither of which we find persuasive. Plaintiff first argues that the Board's "wholesale rejection" of his own testimony, the reports of his treating physicians, and the Board's own appointed physician in favor of Dr. Levin is against the manifest weight of the evidence. He argues that Dr. Levin's report constituted an "outlier opinion" that failed to base its conclusion on relevant or material evidence consistent with the remainder of the medical record. Plaintiff further asserts that the deference afforded to the Board's decision is not "boundless" and that credibility determinations remain subject to judicial review. He cites *Ashmore v. Board of Trustees of the Bloomington Police Pension Fund*, 2018 IL App (4th) 180196, as similar to the case at bar.

¶ 63 We agree with plaintiff that although a reviewing court gives considerable weight to an agency's factual and credibility determinations, the deference afforded is not without limitation. See *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 68. Indeed, we may set aside any findings which are against the manifest weight of the evidence. *Id.* Although *Ashmore* exemplifies these principles, in the case at bar, *Ashmore* is inapposite.

¶ 64 In *Ashmore*, the plaintiff, while on duty as a police officer, injured himself while pushing a vehicle out of the snow. *Ashmore*, 2018 IL App (4th) 180196, ¶ 5. Plaintiff sought medical treatment following the injury and underwent multiple surgeries thereafter. *Id.* ¶ 12. However, the plaintiff testified that none of the treatments helped; he was losing the ability to extend his arm, had difficulty grasping or putting weight on his left arm, and often had difficulty with dexterity. *Id.* The plaintiff applied for disability benefits, claiming that he was injured while performing an "act of duty" and was therefore entitled to a line-of-duty pension, as opposed to a not-on-duty pension. *Id.* ¶ 5.

¶ 65 Following an evidentiary hearing, the Board denied the plaintiff's application, concluding that he was not disabled. *Id.* ¶ 29. The Board noted that three independent medical examiners had examined the plaintiff. *Id.* ¶ 29. However, one of the three, on whose opinion the Board relied, had certified the plaintiff as "not disabled." *Id.* ¶ 29.

¶ 66 On review in the fifth district appellate court, the justices found error in the Board's decision. *Id.* ¶ 44. In reversing, the court noted the findings of three medical examiners who had expressed opinions on the issues of the plaintiff's disability. *Id.* ¶¶ 45-46. Of the three medical examiners, two concluded that the plaintiff was disabled. *Id.* In contrast, although the third medical examiner did not dispute the plaintiff's medical condition, after having reviewed the plaintiff's job description and concluding that the "vast majority" of the plaintiff's job duties were

"administrative in nature," the third examiner opined that the plaintiff was not disabled. *Id.* ¶ 46. The appellate court found the dissenting medical examiner's report not credible as it was not based on "relevant, material evidence that was key under the circumstances," and was inconsistent with the duties required of patrol officers. (Internal quotation marks omitted.) *Id.* ¶ 47**.**

¶ 67   In this case, there is no indication that Dr. Levin's opinion was based on a misperception of the plaintiff's job duties. Here, unlike in *Ashmore*, where the Board's decision was based on the "outlier's" misrepresentation of the nature of police work, we find nothing in this record to suggest that Dr. Levin's opinion was in any way unreliable. Dr. Levin's opinion was based on competent medical evidence that undermined the claimed causal connection between plaintiff's back injuries and the May 2013 incident. Specifically, Dr. Levin relied on the absence of contemporaneous back complaints following the 2013 event and the presence of later intervening incidents, thereby providing a medically supported basis to question whether the 2013 act of duty caused plaintiff's condition.

¶ 68   Moreover, there is no presumption that a claimant's treating physician's opinions should be given greater weight than those of a Board's independent medical examiner. See *Trettenero v. Police Pension Fund of the City of Aurora*, 333 Ill. App. 3d 792, 802 (2002) (the plaintiff's physician's testimony was not given more weight than the testimony of the Board's selected physician, even though plaintiff's physician had treated her for more than eight years). Given that "the weight of the evidence and the credibility of the witnesses are within the province of the board, there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App 3d 180, 184 (1992). And, finally, it was not only Dr. Levin's opinion that tipped the scales, but also plaintiff's own testimony that the Board found not credible. We, like the Board, noted that from the time of the May 2013 incident up until

the hearing before the Board, plaintiff's step on a large rock resulting in a twisted ankle evolved into a "hop over a fence, and then hopping back over the fence," landing in "busted up" concrete in the alley, resulting in a snapped ankle and an injured back.

¶ 69    Next, plaintiff argues that he met his burden of proving disability, and the Board's reliance on Dr. Levins report, who was a paid expert that did not testify, violates the Code and is fundamentally unfair. He argues that Dr. Buchanan, not Dr. Levin, is the only doctor who testified at the hearing, and she readily agreed that he could have sustained his pain from falling and twisting his ankle "as he had done in 2013." Plaintiff notes that section 5-156 of the Code requires that proof of a disability be furnished to the Board by at least one licensed physician appointed by the Board and "[i]n cases where the board requests an applicant to get a second opinion, the applicant must select a physician from a list of qualified licensed and practicing physicians who specialize in the various medical areas related to duty injuries and illnesses, as established by the board." 40 ILCS 5/5-156 (West 2022).

¶ 70    As best as we can discern, plaintiff attempts to use the language in the statute to point out that Dr. Buchanan was the Board-appointed physician, not Dr. Levin, and, unlike Dr. Levin, Dr. Buchanan provided live testimony at the hearing and agreed that plaintiff could have sustained his spinal injury during the May 2013 incident. Plaintiff fails to note that the Code also provides that "[t]he board may require other evidence of disability." *Id.* § 5-156. Additionally, plaintiff cites nothing in the Code or in the record that precluded him from calling Dr. Levin, even if as an adverse witness. Thus, we reject plaintiff's argument as not only lacking in merit, but also as unsupported by statute. Further, Dr. Buchanan did not examine plaintiff. Consistent with plaintiff's counsel's stated purpose, she was called and testified to explain sciatica and the manner in which symptoms of the condition are manifested in the body, and not to offer an opinion. We hasten to

add that Dr. Buchanan testified that plaintiff could have sustained his injury from "falling" and twisting his ankle as he had in 2013. Significantly, there is no evidence, even in plaintiff's own evolving recitation of the incident, that plaintiff sustained his injuries from a fall.

¶ 71　Plaintiff additionally contends that Dr. Levin's opinion that plaintiff's disability resulted from a later incident rather than the May 23, 2013, event was inconsistent with the objective medical evidence and plaintiff's testimony regarding the onset of his symptoms. Plaintiff points to a 2013 MRI of his back, obtained shortly after his ankle cast was removed, which showed the spinal injury that later required three surgeries and ultimately led to his inability to work. Plaintiff also argues that the Board's causation determination is inconsistent with how his employer, CPD, treated his injury. He asserts that CPD classified the 2021 training injury as a recurrence or aggravation of the 2013 injury rather than a new injury, noting that he was not granted a new 365-day injured-on-duty pay allotment but instead was placed on unpaid leave after exhausting the time associated with the 2013 incident. Plaintiff points to his inability to question Dr. Levin at the hearing regarding the 2021 injury and proceeds to then criticize the Board for its failure to question "its own doctor" or plaintiff about the matter. According to plaintiff, these circumstances undermine Dr. Levin's theory that the disability stemmed from a new 2021 injury and demonstrate that the Board's causation finding is against the manifest weight of the evidence.

¶ 72　The Board responds that plaintiff's argument lacks merit and that its reliance on Dr. Levin's report was reasonable in light of the record as a whole. The Board further explains that Dr. Levin's opinion was grounded in evidence showing that plaintiff did not report low-back symptoms immediately following the May 23, 2013, incident, a delay that Dr. Levin considered significant in forming his causation opinion.

¶ 73 We note again that in administrative review cases where the evidence regarding a claimant's eligibility for disability benefits is in conflict, the Board is responsible for evaluating the credibility of both witness testimony and documentary proof to determine the appropriate weight to be assigned to each. *Marconi*, 225 Ill. 2d at 540; see also *Launius v. Board of Fire & Police Commissioners of City of Des Plaines*, 151 Ill. 2d 419, 427-28 (1992) (resolving factual inconsistencies and determining where the preponderance of the evidence lies are not functions of the reviewing court). Further, where there is some evidence that supports the Board's factual conclusions, we will not disturb the Board's conclusion, even if an opposite conclusion is reasonable. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997). That said, we point out that in its decision, the Board noted plaintiff's failure to include in the causation chain any mention of the January 20, 2021, training incident. We also point out that it was plaintiff's burden to prove causation. *Wade*, 226 Ill. 2d at 505; *Marconi*, 225 Ill. 2d at 532-33. He failed to carry his burden.

¶ 74 The Board expressly determined that the objective absence of any back-related complaints in the immediate aftermath of the injury carried substantial weight in its analysis. The record is entirely silent as to any complaints of back pain or spinal injury between the date of the occurrence and late August 2013, including in the Northwestern Memorial Hospital emergency department discharge instructions, the CPD injury reports, and several months of treatment notes from Dr. Stephen V. Perns. It was the Board's function to consider these contemporaneous omissions, together with the testimonial inconsistencies in the record, in assessing whether plaintiff established a direct causal link between the 2013 act of duty and his resulting condition. We find the administrative record contains sufficient evidence to support that determination. Viewed in this

light, we cannot conclude that the Board's decision was unreasonable or that the opposite conclusion should have been reached.

¶ 75                                      III. CONCLUSION

¶ 76    For the reasons stated, we find that the Board's decision to award plaintiff ordinary disability benefits rather than duty disability benefits for the time period of September 16, 2021, to July 24, 2023, was not against the manifest weight of the evidence.

¶ 77    Affirmed.